*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
**Maura D. Corrigan**

Justices
**Michael F. Cavanagh**
**Elizabeth A. Weaver**
**Marilyn Kelly**
**Clifford W. Taylor**
**Robert P. Young, Jr.**
**Stephen J. Markman**

FILED JULY 5, 2001

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                      No. 115820

JIMMY MASS, a/k/a KOOL AID,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

    Defendant was convicted, on an aider and abettor theory, of (1) delivery of 225 grams or more but less than 650 grams of a mixture containing cocaine[1] and with (2) conspiracy to commit that offense.[2]

    We granted leave to determine whether knowledge of the amount of the controlled

---

[1]MCL 333.7401(2)(a)(ii).

[2]MCL 750.157a.

substance was a necessary element of the delivery and conspiracy charges, and, if so, whether the prosecution's evidence was insufficient to prove this element and whether the omission of it from the jury instructions deprived defendant of a fair trial.[3]

As explained below, we conclude that the amount of a controlled substance is an element of a delivery offense, but that knowledge of the amount is not an element of a delivery charge. However, consistent with *People v Justice (After Remand)*, 454 Mich 334; 562 NW2d 652 (1997),and *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), we also hold that knowledge of the amount of a controlled substance is an element of a conspiracy to deliver charge.

## I. Evidence Presented at Trial

An undercover state police officer testified that in early 1996 he purchased crack cocaine six times from Monolito Blackstone. As detailed below, the officer told the jury that defendant assisted Blackstone in completing a seventh sale.

On March 19, 1996, the officer visited Blackstone's apartment and advised that he wished to purchase ten ounces[4] of cocaine. Blackstone began making phone calls. Jimmy Mass, who lived across the hall, then arrived. Blackstone told Mass he needed "ten ounces" and asked if he knew anyone who they

---

[3]462 Mich 877 (2000).

[4]Ten ounces is roughly 280 grams.

"could get ten ounces from." Mass said "you should have told me earlier" and began making telephone calls from Blackstone's bedroom. He then returned and advised Blackstone that "his man was not there."

On March 25, 1996, the officer again phoned Blackstone and indicated that he still wanted to purchase ten ounces of cocaine. Blackstone told the officer to meet him the next morning at his apartment. At that meeting, Blackstone made a phone call and advised he would have to travel to Detroit to get the cocaine. Before the meeting ended the officer gave Blackstone $3,700, one half of the agreed upon price as a down payment, and they agreed to meet in the afternoon. At 2:00 that afternoon the officer was told by Mass that Blackstone was not coming back, but that he would direct the officer to a meeting place with Blackstone. The officer responded by expressing some hesitation about that arrangement, and indicated he wanted to speak with Blackstone. To facilitate this, Mass took the officer to his own apartment where he telephoned Blackstone and handed the phone to the officer. In that conversation, Blackstone told the officer that the police had followed him to Detroit and that defendant would bring him to a place where the sale could be completed. Mass and the officer then got into the officer's car, and, under Mass' direction, they drove to a house in Monroe. As they

3

proceeded, Mass gave the directive to the officer to pull over because he believed a car had been following them. Moreover, when the officer for his part indicated that things did not seem right, Mass reassured him that Blackstone had the officer's "stuff" and that "that part of it was straight." Mass also confided to the officer that if Blackstone had taken him with him to Detroit that he would have made sure the police did not follow.

Upon arrival at the house, Mass got out of the car and began looking up and down the street in the manner of a lookout. Meanwhile Blackstone came out from behind the house, got in the car, and handed the officer a package and said "here is your ten ounces."[5] The officer then paid Blackstone the balance of the purchase price, and drove off alone leaving Mass and Blackstone together in front of the residence.

At the close of the prosecution's case, defense counsel moved for a directed verdict with regard to the delivery and conspiracy charges. The trial court denied the motion stating that a question of fact existed for the jury. Defendant did not testify or present any evidence. In his closing argument defense counsel argued that Mass was a "sad sack, who should pick better friends" but that he had only been present [when

---

[5]Later testing showed the cocaine weighed 246.4 grams.

4

Blackstone had delivered the drugs] and was not part of any conspiracy. Following jury instructions,[6] the jury convicted Mass as charged on both counts.[7]

II. The Court of Appeals Opinion resolving defendant's appeal

The Court of Appeals affirmed defendant's convictions in a divided opinion.[8] The majority rejected defendant's claim that the evidence was insufficient because the prosecution had presented no evidence that he had knowledge of the quantity of cocaine to be delivered. It concluded that knowledge of the amount of cocaine was not an element of either the delivery charge or the conspiracy charge. The Court also rejected defendant's assertion that *People v Justice, supra*, required

---

[6]Defense counsel's sole jury instruction objection concerned the giving of a circumstantial evidence instruction.

[7]The trial court found substantial and compelling reasons to depart from the presumptive twenty- to thirty-year sentences and imposed a ten- to twenty-year sentence for each conviction. The prosecutor appealed the sentences and the Court of Appeals reversed and remanded for resentencing. Unpublished opinion per curiam, issued April 14, 1998 (Docket No. 203651). The Court of Appeals held that the trial court had failed to specifically articulate reasons why the factors it identified provided "substantial and compelling" reasons to except the sentences from the presumptive sentences. It also held the trial court had failed to articulate additional justification for the extent of the departure. The Court indicated that it was conceivable that a departure sentence would be appropriate at resentencing. The trial court postponed resentencing defendant until further order of the Court. It appears the trial court is awaiting resolution of defendant's appeal in this Court before going forward with the resentencing.

[8]238 Mich App 333; 605 NW2d 322 (1999).

5

proof of knowledge of the quantity of controlled substances for a conspiracy conviction. Alternatively, the majority said that, even if *Justice* required the prosecutor to prove that defendant knew the quantity of cocaine involved to support the conspiracy conviction, the evidence was sufficient to show that Mass knew the quantity of cocaine to be delivered.

The Court also indicated there was no flaw in the jury instructions, even though the instructions did not appraise the jury that the prosecution had to prove that defendant knew the quantity of cocaine involved in the transaction. It concluded that, because knowledge of the quantity of drugs is not an element of the crimes charged, the jury instructions did not constitute error. Alternatively, the majority indicated that if knowledge was an element, any error had been forfeited where there had been no objection to the instructions and the alleged error was not outcome determinative.

Judge Hoekstra dissented with respect to the conspiracy conviction because he believed *Justice* required the prosecution to prove defendant had the specific intent to deliver the statutory amount of at least 225 grams. He opined that conspiracy was a different offense than delivery and that, while knowledge of the quantity of drugs involved is not an element of a possession charge, it is an element of a

**6**

conspiracy charge.  Judge Hoekstra concluded that defendant was entitled to a new trial regarding his conspiracy conviction because the jury instructions regarding this offense neglected to include one of its elements.

### III. Standards of Review

Whether knowledge of the amount of a controlled substance is a necessary element of a crime is a legal question and we review legal questions de novo. *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999).

The test for determining whether evidence was sufficient to establish an element of a crime is found in *People v Hampton*, 407 Mich 354, 365-368; 285 NW2d 284 (1979).  The test requires us to view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the element of the crime was proven beyond a reasonable doubt.  *Id*.[9]

We review forfeited error, such as the failure to instruct a jury regarding one element of an offense, to determine whether "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Carines,* 460 Mich 750, 774; 597 NW2d 130 (1999).  We reverse if it did.

---

[9]This test is more exacting than the former "any evidence" standard that *Hampton* disapproved.  *Id.*

7

IV. This Court's Opinion in *People v Justice*[10]

In *Justice* the defendant had been charged with conspiring with another to possess with the intent to deliver more than 650 grams of cocaine and was also charged with conspiring with yet another person to possess with the intent to deliver more than 225 grams but less than 650 grams of cocaine. The prosecution had presented evidence at the preliminary examination of several deliveries of cocaine that were aggregated to reach the charged amounts.

In the course of determining that the prosecution had presented sufficient evidence to justify binding over the defendant for trial, this Court stated: (1) there had to be probable cause to believe that the defendant and the coconspirator shared the specific intent to accomplish *the substantive offenses charged* and (2) that the evidence showed that the defendant and the coconspirator had a specific intent to deliver *the statutory amount* as charged. *Justice, supra.* at 337.

The Court stated its holding as follows:

> To be convicted of conspiracy to possess with intent to deliver a controlled substance, the people must prove that (1) the defendant possessed the specific intent to deliver the statutory minimum as charged, (2) his coconspirators

---

[10]The Court's opinion in *Justice* was authored by Justice Riley and joined by Justices Weaver, Boyle, Brickley, and Chief Justice Mallet.

**8**

possessed the specific intent to deliver *the statutory minimum as charged*, and (3) the defendant and his coconspirators possessed the specific intent to combine to deliver the *statutory minimum as charged* to a third person. [*Id.* at 349 (emphasis added).][11]

## V. Whether Knowledge of the Amount of a Controlled Substance is a Necessary Element of a Delivery Charge?

MCL 333.7401(1) provides:

Except as authorized by this article, a person shall not manufacture, create, deliver[12], or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, an official prescription form, or a counterfeit prescription form. A practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.

Subsection (2) establishes four ranges: (1) if less than fifty grams are involved, a defendant faces a sentence of not less than one year nor more than twenty years or lifetime probation; (2) if fifty grams or more but less than 225 grams

---

[11]Justice Cavanagh dissented. He indicated that he agreed with the majority that to bind defendant over for trial the prosecution had to show defendant and the coconspirator shared the specific intent to accomplish the substantive offenses, but he dissented because the majority did not require that both conspirators possess the specific intent to deliver the *charged amounts* from the time of the *formation* of the conspiratorial agreement. *Id*. at 363.

[12]The terms "deliver" and "delivery" mean "the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." MCL 333.7105(1).

are involved, a defendant faces not less than ten years nor more than twenty years; (3) if 225 grams or more but less than 650 grams are involved, a defendant faces not less than twenty years nor more than thirty years; and (4) if 650 grams or more are involved, a defendant faces life or any term of years not less than twenty years.[13] Hence, subsection (2) increases the applicable prison term as the amount of the controlled substance increases.

A plain reading of MCL 333.7401 makes the amount of a controlled substance an element of a delivery offense. The amount is an element because the level of crime is dependent upon application of subsection 2. Indeed, not until subsection (2) does the statute specifically refer to crimes, "felonies" in this case, that depend on the weight of the controlled substance involved. Moreover, the MCL 333.7401(2). phrase "[a] person who violates *this section* . . ." suggests the determination whether a crime has been committed involves application of *both* subsections (1) and (2).[14]

---

[13]See, e.g.*, People v Daniel*, 462 Mich 1; 609 NW2d 557 (2000); *People v Fields*, 448 Mich 58; 528 NW2d 176 (1995).

[14]Further support of the conclusion that quantity is an element of the delivery offense is the related possession statute, MCL 333.7403, which is similarly structured as MCL 333.7401. Subsection (2) of MCL 333.7403 differentiates between misdemeanors and felonies. Thus, under MCL 333.7403, one cannot determine the level of crime committed (felony or misdemeanor) unless one examines subsection (2).

It is even more evident that subsection (2) of MCL 333.7401 entails the elements of separate offenses because subsection (2) covers various drug types as well as prescription forms. For example, within subsection (2)(a), the elements of the offense are described as they relate to schedule 1 or 2 drugs, while subsection (2)(b) describes a separate offense as it relates to schedule 3 drugs, and subsection (2)(c) describes the offense as it relates to schedule 4 drugs. All these textual clues support the conclusion that the amount and *nature* of controlled substances are elements of a delivery offense under MCL 333.7401.[15]

Having determined that quantity is an element of the delivery offense, we turn to the question whether knowledge of

---

[15]In contrast, under the federal counterpart, 21 USC 841, subsection (b) provides "any person who violates *subsection (a)* of this section . . . ." (Emphasis added.) This phrase shows that the crime is articulated in subsection (a), while subsection (b) specifies how a person who violates subsection (a) is to be sentenced. Clearly, MCL 333.7401 is distinguishable from 21 USC 841 on this structural difference. Historically, federal courts have construed 21 USC 841 as providing that "the quantity of drugs involved . . . is *not* a substantive element of the crime which must be charged and proved at trial." *United States v Dorlouis*, 107 F3d 248, 252 (CA 4, 1997) (emphasis added). However, as explained in part VIII of this opinion, *Apprendi* has changed this. The concurrence's overreliance on federal case law fails to appreciate the fact that in Michigan, pursuant to our statute, the amount of a controlled substance is part of a delivery offense, whereas under the federal statute, apart from *Apprendi*, this is not the case. Hence, we disagree that the instant case is "indistinguishable" from those addressed by federal conspiracy law. Slip op, p 7.

the amount is an element of a delivery offense.

The Court of Appeals held that knowledge of the amount of cocaine involved is not an element of a charge of delivery of cocaine, citing *People v Cortez*, 131 Mich App 316, 331; 346 NW2d 540 (1984),[16] and *People v Northrup*, 213 Mich App 494, 498; 541 NW2d 275 (1995).[17]

It is also the case that this Court stated as follows in *People v Quinn*, 440 Mich 178, 189; 487 NW2d 194 (1992):

> [A] defendant need not know the quantity of narcotics to be found guilty of possession of a controlled substance under MCL 333.7401; MSA 14.15(7401).

We hold, consistent with the text of the statute, the Court of Appeals holdings, and our prior statement in *Quinn,* that knowledge of the amount of a controlled substance is not an element of a delivery charge.[18] This holding is, of course, consistent with the fact that delivery of a controlled substance is a general intent crime. *People v Maleski*, 220 Mich App 518, 522; 560 NW2d 71 (1996).

### VI. Sufficiency of the Evidence Regarding the Delivery Conviction

---

[16]Remanded on other grounds 423 Mich 855 (1985).

[17]Accord *People v Hamp*, 170 Mich App 24, 35; 428 NW2d 16 (1988), vacated in part 437 Mich 865 (1990).

[18]As explained later in this opinion, we are satisfied that *Apprendi* is inapplicable to this conclusion so long as the jury does in fact determine as it did here, the amount of controlled substances that was actually delivered.

Defendant cites the following language from *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995):

> To support a finding that a defendant aided and abetted a crime, the prosecutor must show that ... (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

Defendant argues from this language that the evidence may show he intended a cocaine delivery, but that the evidence was insufficient to show he intended the crime of delivery of at least 225 grams of cocaine or had knowledge Blackstone intended to deliver at least 225 grams of cocaine at the time he aided the delivery.

The aiding and abetting statute, MCL 767.39 provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

The "requisite intent" for conviction of a crime as an aider and abettor "is that necessary to be convicted of the crime as a principal." *People v Kelly*, 423 Mich 261, 278; 378 NW2d 365 (1985). Accordingly, it was enough for the prosecution to show that Mass, as with the principal offender Blackstone, knowingly delivered or aided in the delivery of some amount of cocaine, as long as the jury later determined

**13**

that at least 225 grams of cocaine were in fact delivered. The prosecution simply did not need to show that defendant knew that the amount of cocaine involved in the instant delivery was at least 225 grams to secure Blackstone's delivery conviction or Mass' conviction for aiding and abetting in the delivery of at least 225 but less than 650 grams of cocaine. Conviction of a crime as an aider and abettor does not require a higher level of intent with regard to the commission of the crime than that required for conviction as a principal. *Id*. To the extent that the cited language from *Turner* may suggest otherwise, it is disapproved.

Because the evidence showed defendant knew he was aiding and abetting Blackstone in a delivery of cocaine and the amount of cocaine delivered exceeded 225 grams, the evidence was sufficient to convict defendant of delivery of 225 grams or more but less than 650 grams of cocaine.

### VII. Whether Knowledge of the Amount of the Controlled Substance was a Necessary Element of the Conspiracy to Delivery Charge?

MCL 750.157a provides:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein . . . .

Conspiracy is a specific-intent crime, because it requires both the intent to combine with others and the intent

**14**

to accomplish the illegal objective.  *People v Carter*, 415

Mich 558, 567-568; 330 NW2d 314 (1982).[19]

As previously indicated, one of the charges defendant

faced was conspiring with Blackstone to deliver 225 grams or

more but less than 650 grams of cocaine.

In *Justice* this Court held that to be convicted of

conspiracy to possess with intent to deliver a controlled

substance, the prosecution had to prove that (1) the defendant

possessed the specific intent to deliver the statutory minimum

as charged, (2) his coconspirators possessed the specific

intent to deliver *the statutory minimum as charged*, and (3)

the defendant and his coconspirators possessed the specific

intent to combine to deliver the *statutory minimum as charged*

to a third person.  *Id.* at 349.

This Court specifically held that a defendant could not

be guilty of conspiring to possess with the intent to deliver

---

[19]While we do not dispute the concurrence's point that the agreement necessary to form a conspiracy does not rise to the level of the "meeting of the minds" concept from contract law, the statute does require an agreement to commit a prohibited offense.  If no such agreement is reached, the conspiracy statute has not been violated.  Thus, although the government need not prove commission of the substantive offense or even that the conspirators knew all the details of the conspiracy, *US v Rosa*, 17 F3d 1531, 1543 (CA 2, 1994), it must prove that "the intended future conduct they . . . agreed upon include[s] all the elements of the substantive crime."  *US v Rose*, 590 F2d 232, 235 (CA 7, 1978).  Here, the substantive crime involved at least 225 grams of cocaine.  Thus, the prosecution was required to show the defendant agreed to deliver, not just any amount, but at least this amount.

more than 650 grams of cocaine unless the prosecution was able to prove beyond a reasonable doubt, not just that the defendant had conspired to possess with an intent to deliver some amount of cocaine, but rather, had conspired to possess with an intent to deliver the *statutory minimum* of 650 grams.

The Court of Appeals majority stated:

> A reasonable interpretation of the phrase, "the specific intent to deliver the statutory minimum as charged," is that the defendant must possess the specific intent to deliver the controlled substance, and that the quantity of the substance must then meet the statutory minimum. To interpret this phrase to require proof that the defendant knew the exact quantity of the controlled substance would lead to unreasonable results. For example, a defendant could be found guilty of a delivery offense without knowing how much cocaine was involved, while avoiding all criminal liability for conspiracy merely because, although he knew that he was agreeing to deliver cocaine, he did not know how much cocaine was to be delivered. Or, a defendant could avoid conspiracy liability because, although he knew the rough extent of the amount of cocaine involved in a drug transaction, he did not know the exact measurement with scientific precision, i.e., whether 224 or 226 grams of cocaine were involved. [*Id*. at 337.]

We are unable to agree with the Court of Appeals interpretation of this Court's holding in *Justice*. This Court's holding unambiguously calls for the prosecution to prove (in a conspiracy to possess with intent to deliver charge), not just that the defendant conspired to possess with intent to deliver some or any amount of cocaine, but "the statutory minimum as charged."

**16**

We also disagree with the Court of Appeals that

> a defendant could be found guilty of a delivery
> offense without knowing how much cocaine was
> involved, while avoiding all criminal liability for
> conspiracy merely because, although he knew that he
> was agreeing to deliver cocaine, he did not know
> how much cocaine was to be delivered. *Id.*

This analysis is in error because it fails to recognize that if one conspires to deliver an unspecified amount of cocaine one would, at a minimum, be guilty of conspiring to deliver less than fifty grams of cocaine. Thus, a defendant would not, as stated by the Court of Appeals, "avoid all criminal liability"; rather, he would be convicted of a felony and could face a twenty-year term of incarceration.

We further disagree with the Court of Appeals that

> a defendant could avoid conspiracy liability
> because, although he knew the rough extent of the
> amount of cocaine involved in a drug transaction,
> he did not know the exact measurement with
> scientific precision, i.e., whether 224 or 226
> grams of cocaine were involved. *Id.* at 337.

Once again, this analysis is flawed. If the prosecution proved to a jury that a defendant had conspired to deliver a significant amount of cocaine, but the jury was not sure if the defendant knew 224 grams or 226 grams were involved, the jury would properly convict such a defendant of conspiracy to deliver more than 50 grams but less than 225 grams of cocaine. Such a defendant would not avoid conspiracy liability. Rather, such a defendant would be properly convicted of a

felony and would face at least a presumptive ten- to twenty-year term of incarceration.[20]

Further, the Court of Appeals analysis improperly suggests that a conspiracy conviction must be tied to the amount of cocaine that was eventually delivered. This will not always be the case. The gist of a conspiracy is the unlawful agreement. *People v Asta*, 337 Mich 590, 611; 60 NW2d 472 (1953). Indeed, the purpose of the conspiracy need not be accomplished. *Id. In People v Denio,* 454 Mich 691, 712; 564 NW2d 13 (1997), this Court noted that it has "repeatedly held" that conspiracy is separate and distinct from the substantive crime that is its object. The Court of Appeals erroneous assumption that the amount of cocaine actually delivered is the amount a defendant conspired to deliver could, in some instances, improperly work to a drug dealer's benefit. For example, if wiretap evidence showed a drug dealer asked someone to help him deliver 700 grams of cocaine and the person agreed (and both parties actually intend to deliver 700 grams), such a person would be guilty of conspiring to deliver more than 650 grams of cocaine, *even if no sale took place or*

---

[20]To reiterate, the prosecution is not required to show the defendant knew the precise or specific amount. However, if the prosecution charges a defendant with conspiracy to deliver a controlled substance above the lowest amount of less than 50 grams, it must submit evidence showing the defendant agreed to commit the more serious offense.

*if the amount of cocaine that was actually delivered turned*

*out to be less than 650 grams.*[21]

The prosecution argues that *Justice* should not be applicable here because (1) the crime charged in *Justice* was the specific intent crime of possession with intent to deliver,[22] whereas the crime herein was the general intent crime of delivery, and (2) *Justice* involved multiple small transactions that were aggregated, whereas the case at bar involved only one transaction.[23] It has also been suggested that *Justice* was wrongly decided and that we should hold that knowledge of the amount of a controlled substance is not an element of a conspiracy offense.[24] We find unpersuasive these

---

[21]

[22]While delivery of a controlled substance is a general intent crime, *People v Maleski*, *supra*, possession with intent to deliver is a specific intent crime. *People v Crawford*, 458 Mich 376, 417, n 19; 582 NW2d 785 (1998) (Boyle, J., dissenting).

[23]The prosecutor indicates that the overall objective of a conspiracy case which involves numerous deals is not as clear in cases involving one transaction, so the "additional element of intent in those cases is justified."

[24]We agree that such a holding might be supported by *United States v Feola*, 420 US 671; 95 S Ct 1255; 43 L Ed 2d 541 (1975), where the United States Supreme Court held the crime of conspiracy to assault a federal officer did not require a criminal intent greater than that necessary to convict for the substantive offense of assaulting a federal officer. *Feola* is neither directly on point nor controlling. In contrast, *People v Justice* is on point and controlling, absent a decision to overrule the case. Indeed, in *Feola* a holding that knowledge was an element would have led to
(continued...)

**19**

criticisms of and efforts to distinguish *Justice.* We are satisfied that *Justice* properly concluded that knowledge of the amount of a controlled substance is an element of the crime of conspiracy to deliver a controlled substance, and that this holding is consistent with a correct interpretation of our controlled substance and conspiracy statutes.[25] This is because our conspiracy statute, MCL 750.157a, makes it a crime to conspire with another to commit "an offense." And, as previously explained, there are four separate delivery offenses depending on the amount of contraband involved. The fact that *Justice* required the prosecution to establish the

---

[24](...continued)
dismissal of the federal charges. We do not face such a situation in that the prosecution will always be able to argue for a conspiracy to deliver less than 50 grams of cocaine charge if there is no evidence regarding the amount of cocaine the conspirators agreed to deliver. It is also the case that *Feola* is not without its critics. See, e.g.*, US v Cordoba-Hincapie*, 825 F Supp 485, 510-511 (ED NY, 1993). In any event, notwithstanding *Feola*, we believe *Justice* and *Apprendi* preclude us from determining that knowledge of the amount is not an element of a conspiracy to deliver a controlled substance charge.

[25]The concurrence indicates that *Justice* correctly required the prosecution to show the defendant intended to engage in the prohibited conduct, slip op, p 14, but then "inexplicably" concluded the defendant had to possess the specific intent to deliver the statutory minimum charged. Slip op, p 15. We see nothing inexplicable in the conclusion. What the concurrence fails to recognize is that "the prohibited conduct" is not just agreeing to deliver some amount of cocaine, but agreeing to commit one of four delivery offenses and those offenses are in four ranges depending on the amount with which the prosecution charges the defendant.

**20**

statutory charged amount is fully consistent with requiring the prosecution to prove which delivery offense a defendant conspired to violate and with the fact that conspiracy is a specific intent crime.[26] Moreover, as explained below, we find *Apprendi* provides independent support for this conclusion.

To make our position clear, if a conspiracy to deliver and a delivery charge are coupled (and the proofs for the delivery demonstrate the weight of the substance delivered) such proofs may suffice to demonstrate defendant's knowledge of the amount for the conspiracy charge.  This is because a prosecutor is free to argue, and the jury would be free to find, if it was persuaded, given all the circumstances, that defendant had knowingly conspired to deliver the same amount that was actually delivered.

## VIII. *Apprendi v New Jersey*

Mr. Apprendi was convicted in state court of possession of a firearm for an unlawful purpose, an offense punishable by imprisonment from five to ten years.  However, at sentencing the trial judge found, by a preponderance of the evidence, that Apprendi had committed the crime with a purpose to intimidate individuals because of their race.  This finding

---

[26]Thus, we reject the concurrence's claim that we have somehow "add[ed] an element" to a statute.  Slip op, p 20. Rather, we believe it is the concurrence that would refuse to require the prosecution to prove an element required under our conspiracy and delivery statutes.

**21**

served to increase the sentence under New Jersey's "hate crime" law to imprisonment from ten to twenty years. The United States Supreme Court held as a matter of federal constitutional law that

> [o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. [*Apprendi, supra* at 490.][27]

The Court explained that it does not matter that a particular fact is designated as a "sentencing factor." Rather,

> the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict? [*Id*. at 494.]

Before *Apprendi*, federal courts generally held that the quantity of drugs was not an element of the federal drug offenses. The prevailing approach appeared to be that the trial court determined by a preponderance of the evidence the "reasonably foreseeable" quantities of contraband that were within the scope of the criminal activity that the defendant jointly undertook. *United States v Pagan,* 196 F3d 884, 891 (CA 7, 1999). Quantity was a matter for the trial court at sentencing. *United States v Doggett,* 230 F3d 160 (CA 5,

---

[27]The four dissenting justices characterized the Court's opinion as "a watershed change in constitutional law." *Apprendi, supra* at 524 (O'Connor, J., dissenting).

2000).

However, the Federal Courts of Appeals have recently, and repeatedly, held that, under *Apprendi,* drug quantity is an element of a controlled substances offense, and that the element must be submitted to the jury and proved beyond a reasonable doubt if the quantity "increases the penalty for a crime beyond the prescribed statutory maximum." *Doggett, supra.* Accord, *United States v Fields*, 242 F3d 393 (CA DC 2001)[28] (*drug quantity* is an element of the offense where a factual determination of the amount of drugs at issue may result in a sentence that exceeds a maximum sentence prescribed in the applicable statute*); United States* v *Aguayo-Delgado,* 220 F3d 926 (CA 8, 2000).

As stated in *Doggett, supra* at 163:

> Notwithstanding prior precedent of this circuit and the Supreme Court that Congress did not intend drug quantity to be an element of the crime under 21 USC 841 and 846, we are constrained by *Apprendi* to find in the opposite.

In *United States v Page*, 232 F3d 536 (CA 6, 2000), the defendant was charged in federal court with conspiracy to distribute cocaine. There was no mention of the quantity in the indictment, and the jury made no findings regarding quantity. On the basis of a trial court determination at sentencing that more than 1.5 kilograms were attributable to

---

[28]Clarified on rehearing, 2001 WL 640631 (June 12, 2001).

**23**

the defendant, the court imposed a thirty-year sentence.  This was ten more years than the prescribed statutory maximum.  The Court stated:

> As instructed in *Apprendi*, a defendant may not be exposed to a greater punishment than that authorized by the jury's guilty verdict.  The jury merely found that defendants conspired to distribute and possess to distribute some undetermined amount of crack cocaine.  As such, defendants cannot be exposed to the higher penalties under § 841(b)(1)(A) or (B).  Rather, the maximum sentence that may be imposed on this count is 20 years pursuant to § 841(b)(1)(C). [*Id.* at 543.]

Even though the issue had been forfeited, the Court granted the defendant relief because the error resulted in imposition of a sentence ten years longer than the sentence could have been without the error.  The Court said this affected Page's substantial rights and the fairness of the proceeding was undermined since the error affected the outcome by substantially increasing the sentence.[29]

### IX. The delivery instructions

As to his delivery conviction, defendant claims the

---

[29]In *United States v Flowal*, 234 F3d 932, 938 (CA 6, 2000), another Sixth Circuit case addressing *Apprendi*, the court stated:

> Because the amount of drugs at issue determined the appropriate statutory punishment, a jury should have determined the weight of drugs beyond a reasonable doubt. . . . Accordingly, the prosecution is only entitled to the punishment provisions of the crime whose elements it has proved to a jury beyond a reasonable doubt.

**24**

United States Supreme Court's recent opinion in *Apprendi, supra*, requires that the jury had to determine whether he knew Blackstone intended to deliver at least 225 grams of cocaine before he could properly be convicted of delivery of 225 grams or more of cocaine. We disagree.

The trial court instructed the jury on the delivery offense as follows:

> The defendant is charged with the crime of Illegally Delivering More Than 225 grams But Less Than 650 grams of a Mixture Containing a Controlled Substance, Cocaine. To prove this charge *the prosecutor must prove* each of the following elements, *beyond a reasonable doubt*. First, that the defendant delivered a controlled substance. Second, that the substance delivered was cocaine. Third, that the defendant knew he was delivering cocaine. Fourth, that *the substance was in a mixture that weighed 225 or more grams*, but less than 650 grams. [Emphasis added.]

This instruction complied with our determination that the amount of a controlled substance is an element of a controlled substance offense. Further, this instruction did not violate *Apprendi* because the jury was instructed that it could not find defendant guilty of the delivery charge unless the prosecution proved beyond a reasonable doubt that the substance delivered weighed 225 grams or more. The jury necessarily found that at least 225 grams of cocaine were delivered when it convicted defendant of the delivery charge. Hence, defendant's delivery conviction was proper.

25

## X. The conspiracy instructions

However, we find that a different conclusion is required regarding the conspiracy instructions. Because of *Justice* and *Apprendi*, the jury should have been instructed that it could not find defendant guilty of conspiracy to deliver 225 grams or more, but less than 650 grams of cocaine unless it found defendant conspired to deliver, not just any amount of cocaine, but at least 225 grams.

After initially telling the jury it "must take the law as I give it to you," the trial judge gave the following instruction regarding the conspiracy offense:

> The defendant is charged with the crime of Conspiracy to Commit the Delivery of Cocaine. Anyone who knowingly agrees with someone else to commit the Delivery of Cocaine is guilty of Conspiracy. To prove the defendant's guilty the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant and someone else knowingly agreed to commit Delivery of Cocaine. . . .

Notably absent from the conspiracy instruction was the fact that the jury had to find that defendant had conspired, not just to deliver some amount of cocaine, but at least 225 grams. This was a violation of *Justice*. This was also an *Apprendi* error because one can only be certain that the jury concluded that the conspiracy involved less than 50 grams. While the amount eventually delivered may, in a given case, be circumstantial evidence of the nature of agreement, it is

always necessary for the jury to be charged that it must decide the nature of the agreement. The statutory maximum penalty for conspiring to deliver less than fifty grams of cocaine subjects a defendant to a maximum sentence of twenty years, MCL 333.7401(2)(a)(iv). Yet, conviction of conspiring to deliver at least 225 grams of cocaine exposed defendant to a greater punishment of thirty years imprisonment. MCL 333.7401(2)(a)(ii). Thus, the failure to have the jury determine that the conspiracy involved at least 225 grams of cocaine exposed defendant to a thirty-year sentence, which is in excess of the prescribed maximum twenty-year sentence applicable for a conspiracy to deliver less than 50 grams of cocaine.

## XI. Forfeited Error

The defendant did not object to the erroneous conspiracy jury instruction. Because of this, the error was forfeited. The standard that must be met to support reversal of a conviction for nonstructural constitutional error is the same standard as for forfeited non constitutional error, that is, the reviewing court "should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Carines, supra* at 774; *People v Duncan,* 462 Mich 47, 57; 610

NW2d 551 (2000).[30]

Here, the trial court omitted an element from its conspiracy instruction, i.e., the requirement that the prosecution show that defendant specifically agreed to deliver at least 225 or more grams of cocaine. We conclude that this error seriously affected the fairness, integrity, or public reputation of defendant's trial.

Although defendant never argued that he may have conspired to deliver less than 225 grams of cocaine, a properly instructed jury may have so concluded. Given the judge's instructions, it is clear that the jury effectively, and only, determined defendant had conspired to deliver less than 50 grams of cocaine. We find it would seriously affect the fairness and integrity of defendant's trial to allow a conviction of a more serious offense than the one determined by the jury to stand. Accordingly, we reverse defendant's conspiracy to deliver 225 grams or more but less than 650

---

[30]In *Neder v United States*, 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999), the Supreme Court observed that most constitutional errors are subject to harmless error analysis and applied the harmless error rule to a trial court's failure to instruct on an element of an offense. *Apprendi* did not recognize or create a structural error that would require reversal per se. *United States v Swatzie*, 228 F3d 1278, 1283 (CA 11, 2000). A constitutional error is harmless if "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder*, supra, 119 S Ct 1830. See also *Swatzie*, at 1283 ("error in *Neder* is in material respects indistinguishable from error under *Apprendi*").

grams of cocaine and remand for entry of a conviction consistent with the jury verdict, i.e., conspiracy to deliver less than 50 grams of cocaine conviction.[31]

### XII. Response to the concurrence

It is important to point out, before responding to the differences, where we agree with the concurrence. We both agree that a delivery of a controlled substance does not require, for a conviction, knowledge of the amount delivered. We also agree that the conspiracy jury instructions were flawed, requiring defendant be granted a new trial on the conspiracy charge. Our principle difference with the concurrence however, is whether a charge of conspiracy to deliver cocaine in a given amount, standing alone, can be proven without some evidence that the agreement was for the delivery of that amount of cocaine.

To articulate this in the theoretical terms of the criminal law, the concurrence would effectively convert the specific intent crime of conspiracy into a general intent crime. Consider the following: if there were a conspiracy to deliver cocaine, with *no* evidence suggesting the amount of

---

[31]However, if the prosecuting attorney is persuaded that the ends of justice would be better served, upon notification to the trial court before resentencing, defendant may be required to face a new trial on the original conspiracy charge with proper jury instructions. *People v Jenkins*, 395 Mich 440, 443; 236 NW2d 503 (1975).

cocaine, under the concurrence view the prosecution could charge the conspirators with conspiracy to deliver more than 650 grams of cocaine if it later develops that this amount was in fact delivered. Such view is in our opinion inconsistent with the plain language of our conspiracy statute, which makes conspiracy a specific intent crime.[32] Indeed, it is just this point—that conspiracy is a specific intent crime that animated the *Justice* decision. Moreover, this conclusion is reinforced by the United States Supreme Court's decision in *Apprendi*.

The concurrence accuses the *Justice* majority, and now us, of "imposing" or "adding" a knowledge requirement into conspiracy charges. We disagree. The concurrence fails to give full consideration to the fact that MCL 750.157a requires that a conspirator must agree to commit "an offense."[33] This

---

[32]In response to the concurrence's claim that we are somehow requiring the law to engage in "mind-reading," slip op, p 25, we simply note that we are only requiring the prosecution to prove the elements of a specific intent crime, and the law has always required some evidence from which the jury might determine the defendant's mens rea in such cases.

[33]See, e.g., *US v Piper*, 35 F3d 611, 615 (CA 1, 1994) (The government must prove that the defendant possessed both "an intent to agree and an intent to effectuate the commission of *the* substantive offense") (emphasis added). "Establishing a conspiracy requires evidence of specific intent to combine with others to accomplish an illegal objective." *People v Blume*, 443 Mich 476, 481; 505 NW2d 843 (1993). In the case at bar, "the offense" was conspiracy to deliver at least 225 grams of cocaine, not conspiracy to deliver cocaine without reference to an amount. Defendant could not conspire to deliver at least 225 grams of cocaine unless he knew and

(continued...)

means we must determine what is "an offense." If the underlying offense is a mere act (like forgery), rather than being one that is graduated to be more severe as the act is more antisocial (such as delivery of controlled substances), then to determine if one of the more severe offenses has been proved, the element making it more severe must be shown. Thus, if the conspiracy is to deliver cocaine, unless the prosecution wants to settle for the lowest charge of conspiracy to deliver less than fifty grams, the prosecution must show the conspiracy involved either 50 to 224 grams or 225 to 649 grams or more than 650 grams. Because in Michigan a conspiracy to deliver cocaine charge can be established by a mere agreement[34] to deliver cocaine that encompasses all the elements of the crime conspired to be committed, there need not be an act in furtherance of the conspiracy for a defendant to be guilty of conspiring to deliver some amount of cocaine. Thus, in a mere agreement

---

[33](...continued) intended the delivery to be at least 225 grams. A person cannot conspire with another to commit the offense of delivery of at least 225 grams of cocaine unless he knows what he has agreed to accomplish. Thus, we reject the claim that we have "added" an element because a knowledge of the amount element arises out of the language of the conspiracy statute itself.

[34]This is in contrast with general federal conspiracy statute, 18 USC 371, which does require an overt act in furtherance of the conspiracy. *Blume*, *supra* at 507(Boyle, J., dissenting).

without an overt act conspiracy scenario, unless the prosecutor can show that this "thought, or plan, crime" included a knowledge of the amount conspired about, only a conviction of less than fifty grams can be obtained. Said another way, if the amount agreed to is not an element of a conspiracy to deliver at least fifty grams of cocaine, how will that element be established and who will make that necessary fact finding? The answer to that question in the federal system is that historically the judge made that determination at sentencing. That ended with *Apprendi*, however. After *Apprendi* the fact of the amount has to be decided by the jury. As we are today determining to continue the approach that *Justice* outlined, we are acting in harmony with *Apprendi*.

What this all means is that while both the majority and the concurrence agree with respect to a delivery charge that the amount delivered may establish, without more, the element of the amount, this approach will not always work in conspiracy cases. The reason is that it is not necessary for a deliver to take place in order for a conspiracy to delivery charge to be brought,[35] and, even when a delivery follows after a conspiracy to deliver is formed, the conspiracy may have

---

[35]Conspiracy is separate and distinct from the substantive crime that is its object. *People v Denio, supra* at 712.

32

been for more or less than the amount that is actually delivered.[36]    It is just this problem with which the concurrence fails to grapple.

The concurrence contends that our reaffirmation of *Justice* will have "serious[] detrimental consequences for Michigan's criminal justice jurisprudence," slip op, p 2, and that "it is likely that in some unknown, but probably quite significant, number of drug prosecutions the prosecutor will be unable to maintain a conviction that is above the statutory maximum for the lowest level delivery offense."  Slip op, p 30.  We cannot agree.

First, regardless of the effect, we must comply, as we have attempted to do, with our conspiracy and delivery statutes (not to mention *Apprendi* which is a constitutionally based ruling).  Moreover, regarding the prediction that there will be unfortunate implications from continuing the rule of *Justice*, we are unaware of any drop off in drug conspiracy prosecutions as a result of *Justice*.  It should also be noted that our reaffirmation of *Justice* does not impose any restraint on a prosecutor's ability to obtain conspiracy to deliver less than 50 gram convictions which carry a maximum twenty year prison term that must be served consecutive to any

---

[36]However, a prosecutor is free to argue that the evidence proves the conspiracy was for the amount that was actually delivered.

delivery conviction that may be obtained.   MCL 333.7401(3).
This is clearly a significant disincentive to engage in such
conduct and a major tool in the law enforcement arsenal.[37]

## XIII. Conclusion

A defendant may be properly convicted of delivery of 225
grams or more but less than 650 grams of cocaine on an aiding
and abetting theory, even if he does not know the amount of
drugs to be delivered, as long as the jury finds that at least
225 grams of cocaine were delivered.

Pursuant to *Justice* and *Apprendi*, a defendant charged
with conspiracy to deliver 225 grams or more but less than 650
grams of cocaine is entitled to have the jury instructed that
the defendant is guilty only if the prosecution has proved
beyond a reasonable doubt that defendant conspired to deliver,
not just some amount of cocaine, but at least 225 grams of
cocaine.

Accordingly, as explained above, defendant's delivery
conviction  is affirmed and the conspiracy to deliver at least
225 grams of cocaine is reversed.   This matter is remanded to

---

[37]The concurrence says it is for the Legislature and not
this Court to determine what is a significant disincentive for
particular conduct.   Slip op, p 30, n 12.   Surely, the
concurrence does not mean to suggest that it is improper for
this Court to remark the obvious.  In any event, we certainly
believe  our  opinion  today  respects  the  Legislature's
determinations of the increased disincentives for larger scale
drug trafficking.

allow the trial court to enter a conspiracy to deliver less than 50 grams of cocaine conviction and sentencing on this count (subject to the condition noted in footnote 31), and also so the Court of Appeals ordered resentencing on the delivery conviction may occur.  Affirmed in part and reversed in part.

CAVANAGH, KELLY, and YOUNG, JJ., concurred with TAYLOR, J.

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                                                No. 115820

JIMMY MASS, a/k/a KOOL AID,

    Defendant-Appellant.
_____

MARKMAN, J. (*concurring*).

I agree with the majority's analysis and conclusion that, while the amount of a controlled substance is an element of a delivery offense pursuant to MCL 333.7401, a defendant's knowledge of such amount is not. However, with regard to whether knowledge of the amount of a controlled substance is an element of a conspiracy to deliver offense, I respectfully concur in the result only and write separately to express my concern that the majority's analysis, which concludes that defendant's knowledge of the amount is an element of a conspiracy to deliver offense, broadens the plain language of both the delivery statute, MCL 333.7401, and the conspiracy statute, MCL 750.157a. Further, the majority's conclusion, in my judgment, has seriously detrimental consequences for

Michigan's criminal justice jurisprudence.

## I.  *PEOPLE V JUSTICE*

In concluding that defendant's knowledge of the amount is an element to a conspiracy to deliver charge, the majority first relies on *People v Justice (After Remand)*, 454 Mich 334; 562 NW2d 652 (1997).  As the majority correctly points out, the *Justice* Court held that, in a conspiracy to possess with intent to deliver charge, the prosecutor has the burden of proving that "the defendant possessed the specific intent to deliver the statutory minimum as charged . . . ."  *Id.* at 349. In my judgment, this holding misstated the law in that it impermissibly broadened the plain language of both the delivery statute, MCL 333.7401, and the conspiracy statute, MCL 750.157a, by requiring a higher level of criminal intent than set forth by those statutes.  Instead, a careful review of these statutes indicates that, in a conspiracy to deliver charge, the prosecutor only has the burden to prove that defendant had the intent to agree, and the specific intent to commit the substantive offense, in essence, to deliver a controlled substance.[1]  The majority correctly concludes that

---

[1]  Interestingly, in *Justice, supra*, this Court also stated that, in order to bind the defendants over on a conspiracy to possess with intent to deliver charge, the prosecutor must show probable cause that the "coconspirators shared the specific intent to accomplish the *substantive offenses charged*."  *Id.* at 337 (emphasis added).  However, as will be discussed, below at 8, when the *Justice* Court applied this general rule to the substantive offense, it somehow
(continued...)

2

knowledge of the amount of a controlled substance is not an element of a delivery charge.  However, I fail to understand why it nevertheless concludes that, when a defendant is charged with *conspiracy* to deliver, knowledge of the amount suddenly becomes an element.  If knowledge is not an element of a delivery charge, how is it properly transformed into an element of a conspiracy to deliver offense?  In my judgment, under the facts of this case, it cannot.

## A. General Conspiracy Law

At common law, the crime of conspiracy was complete upon formation of the unlawful agreement.  Developments in the law—Criminal conspiracy, 72 Harv L R 922, 945 (1959).  Michigan's approach to conspiracy law mirrors that of the common law.  In Michigan, "[a]ny person who conspires together with one or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ."  MCL 750.157a.  This common-law approach to the crime of conspiracy, however, is not the approach followed in a majority of jurisdictions.  Today, most state conspiracy statutes, as well as the federal government general conspiracy statute, 18 USC 371, require the

---

[1](...continued)
concluded that the "defendant [must] possess[] the specific intent to deliver the statutory minimum as charged . . . ." *Id.* at 349.

additional element of an overt act.[2]  An overt act is defined as some act taken by one of the conspirators in furtherance of the conspiracy.  Marcus, Prosecution and Defense of Criminal Conspiracy Cases, ch 2.08, at 2-71.  The requirement of an overt act serves two principal purposes.  First, some believe that an overt act requirement is desirable so that a conspirator is afforded a reasonable opportunity to change his mind and to withdraw from the conspiracy.  "The provision of the statute, that there must be an act done to effect the object of the conspiracy, merely affords a *locus poenitentice*, so that before the act [is] done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute."  *United States v Britton*, 108 US

_____

[2]  Developments in the Law, *supra* at 945-46.  Compare with the federal government's subsequent specific-subject conspiracy statutes that no longer have an overt act requirement.  See, e.g., the RICO conspiracy statute, 18 USC 1962(d), and the drug conspiracy statute, 21 USC 846.  Additionally, even despite the absence of an overt act requirement in the drug conspiracy statute, federal drug conspiracy prosecutions do not require that a defendant have knowledge of the amount of the controlled substance.  Instead, as will be discussed in part III, all that is necessary for a conviction on the substantive drug offense and the conspiracy offense is merely proof of the amount of the controlled substance.  See, e.g., *United States v Fields*, ___ US App DC ___, ___; 242 F3d 393, 396 (2001), clarified on rehearing 2001 WL 640631 (June 12, 2001 (stating that "it is now clear that, in drug cases under 21 USC 841 & 846, before a defendant can be sentenced to any of the progressively higher statutory maximums that are based on progressively higher quantities of drugs specified in 841(b)(1)(A) or (B), the government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt").

4

199, 204-05; 2 S Ct 531; 27 L Ed 698 (1883). In addition, the overt act requirement serves to make certain that society does not intervene prematurely, i.e., at a time when there is not a sufficiently imminent danger that the object crime will be attempted or completed. Marcus, *supra* at 2-74. "The function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work" and is not a project resting solely in the minds of the conspirators.[3] 2 LaFave & Scott, Substantive Criminal Law, § 6.5, at 95. Thus, the overt act requirement ensures that the agreement to commit an unlawful objective has reached a sufficiently advanced stage to warrant preventative action.

In practice, prosecutors rarely charge individuals with a conspiracy until a *substantial* overt act has taken place. Marcus, *supra* at 2-76.[4] Indeed, it is frequently the case that the completed substantive offense itself will be identified as the overt act for purposes of the conspiracy charge. *Id.* at 2-76, n 18. This is readily evident in federal conspiracy cases that rely on the general conspiracy statute. See, e.g., *United States v Feola*, 420 US 671; 95 S

---

[3] Such a concern, in particular, appears to animate the majority opinion and is a concern most relevant to what I will describe as the "pure" Michigan conspiracy, one in which there has been no overt act. See note 6.

[4] As a practical matter, there is little evidence that charging practices are any different on the part of Michigan prosecutors, despite the absence of an overt act requirement.

5

Ct 1255; 43 L Ed 2d 541 (1975). Indeed, in the case before us, the substantive offense itself was completed, in effect constituting the overt act in furtherance of the unlawful objective. As explained in the majority opinion, defendant was convicted, on an aider and abettor theory, of delivery of 225 grams or more, but less than 650 grams, of a mixture containing cocaine. Because an overt act was, in fact, evident in this conspiracy, namely, the completed offense, this case is indistinguishable from the universe of conspiracies that are addressed by federal conspiracy law. Thus, I believe that the principles applied in these cases are highly relevant to the resolution of this case.[5]

---

[5] Although Michigan law allows for the prosecution of drug conspiracies in which the evidence shows that the conspirators merely *agreed* to commit an offense prohibited by law, MCL 750.157a, even absent an overt act, such a "pure" Michigan conspiracy is, as we have noted, not before us. Indeed, such "pure" conspiracies are rarely before us, given the considerable problems of proof that these conspiracies must surmount. This concurrence takes no position with regard to the knowledge requirements of the "pure" conspiracy case, which, as the majority points out, involves a variety of unique concerns. What is before us is the far more commonplace conspiracy in which there has been some overt act, therefore rendering the conspiracy, and its elements, indistinguishable from the typical federal conspiracy. It seems altogether relevant, where conspirators in Michigan have acted in furtherance of a conspiracy by taking overt acts toward its ends, to look to federal law for whatever guidance such law might provide in determining whether a conspirator must have knowledge of the amount of the controlled substance in which he or she is trafficking.

Here the substantive offense was, in fact, completed. However, I am unaware of the law of any jurisdiction that distinguishes between the conspiracy in which an overt act has

(continued...)

**6**

## B.  *People v Feola*

In *Feola*, *supra,* the United States Supreme Court considered an issue similar to that presented in this case. There before the Court was whether the crime of conspiracy to assault a federal drug officer required a criminal intent greater than that required to convict for the substantive offense.  Specifically, the Court sought to determine whether the defendant had to "know" that the intended victim was, in fact, a federal officer.

In the years before *Feola* there had been a split among the federal circuit courts.  In a majority of the circuits,[6] the courts held that, in a conspiracy to commit a federal substantive offense, a defendant need not have  knowledge of the attendant circumstances embodied in the substantive offense.  For example, in *United States v LeFaivre*, 507 F2d 1288 (CA 4, 1974), the United States Court of Appeals for the Fourth Circuit was asked to determine whether, in a conspiracy to violate the travel act, 18 USC 1952, the defendant needed to have knowledge of the use of interstate facilities in order to be found guilty on the conspiracy charge.  In answering

---

[5](...continued)
occurred, and that in which the underlying criminal offense has been completed.  Therefore, in my judgment, the law set forth in this concurrence properly applies wherever there has been an overt act in furtherance of a conspiracy, without regard to whether the substantive offense has been completed.

[6]  Marcus, *supra* at 2-110.

this question in the negative, the Fourth Circuit reasoned that "[w]hether or not certain conspirators actually anticipate the use of facilities in interstate commerce when they plan their unlawful activity of gambling, bribery, etc., add[s] absolutely nothing to the dangerousness of their scheme to the public weal." *Id.* at 1299; see also *United States v Polesti*, 489 F2d 822 (CA 7, 1973); *United States v Roselli*, 432 F2d 879 (CA 9, 1970). Conversely, the Court of Appeals for the Second Circuit rejected the majority view. In *United States v Cangiano*, 491 F2d 906 (CA 2, 1974), the court analyzed whether the defendant, in a conspiracy to transport obscene materials in interstate commerce, must have knowledge that the business would use interstate facilities. In answering this question in the affirmative, the court stated that, because specific intent is required to prove conspiracy, "the proper charge requires that the element of actual knowledge be found by the jury." *Id.* at 910. The United States Supreme Court sought to finally resolve the knowledge issue in *Feola, supra*.[7]

---

[7] The majority asserts that "*Feola* is neither directly on point nor controlling." Although I agree that *Feola* is not dispositive, I nevertheless believe, as stated *supra* at 7, that the principles applied in general federal conspiracy cases are highly persuasive in our resolution of this type of controversy. In particular, *Feola* is instructive because of the substantial similarities of the substantive and conspiracy statutes in these cases. Further, I am aware of no federal or state case law, before or after *Apprendi*, which has deviated from these federal conspiracy principles. See, e.g., *State v*
(continued...)

**8**

## 1.  The Substantive Offense

To resolve the question whether a defendant must know that his intended victim is a federal officer in a conspiracy to assault a federal officer, the Court first examined the elements of the substantive offense, 18 USC 111.  In pertinent part, the substantive offense at issue in *Feola* stated:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.
>
> \* \* \*
>
> Among the persons "designated in section 1114" of 18 USC is "any officer or employee . . . of the Bureau of Narcotics and Dangerous Drugs." [*Feola, supra* at 673, n 1.]

---

[7](...continued)
*Aviles-Alvarez*, 561 NW2d 523 (Minn App 1997)(holding that "[w]hile the amount is an essential element of the crime, the defendant's knowledge of the amount *is not* an essential element").

The majority also asserts that, if the *Feola* Court held that knowledge of the federal officer's identity was an element of the substantive offense, this would have led to a dismissal of the federal charges, and that "[w]e do not face such a situation" in the instant case.  Whether or not the charges would have been dismissed was of no relevance to the *Feola* holding, nor is it of apparent relevance to the instant holding.  Instead, the Court in *Feola*, as this concurrence does today, grounded its decision in the plain language of the substantive and the conspiracy statutes, as well as in the purposes underlying criminal conspiracy law.

9

After analyzing the language of the statute, the Court concluded that § 111 "cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer." *Id.* at 684; *United States v Lombardozzi*, 335 F2d 414, 416 (CA 2, 1964). Instead, the Court found that the statute required an "intent to assault, not an intent to assault a federal officer." *Feola, supra* at 684. The requirement that the victim be a federal officer was merely an element of the substantive offense that need not be specifically known to the defendant. Thus, to prove the substantive offense, the government only needed to establish, among other things, that the victim was a federal officer, not that the defendant knew that the victim was a federal officer.

In the case before us, MCL 333.7401 provides in pertinent part:

> (1) [A] person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance . . . .

> (2) A person who violates this section as to:

> (a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug . . . and:

> (i) Which is in an amount of 650 grams or more of any mixture containing that substance is guilty of a felony and shall be imprisoned for life . . . .

> (ii) Which is in an amount of 225 grams or more, but less than 650 grams, . . . shall be imprisoned for not less than 20 years nor more than 30 years.

> (iii) Which is in an amount of 50 grams or

**10**

more, but less than 225 grams, . . . shall be imprisoned for not less than 10 years nor more than 20 years.

    (iv) Which is an amount less than 50 grams . . . shall be imprisoned for not less than 1 year nor more than 20 years . . . .

A review of this statute indicates that a defendant must have the intent to deliver a controlled substance, not an intent to deliver an amount that falls within a particular statutory range. Subsection (1) clearly states that "a person shall not . . . deliver . . . a controlled substance." Such an interpretation of this language does not mean that the amount is not an element of the offense. It is. Rather, such an interpretation simply means that a defendant need not specifically *know* the amount in order to be convicted of this offense. This conclusion, in my judgment, is in accord with the majority's determination that, while the amount of a controlled substance is an element to a delivery charge, knowledge of the amount is not.

## 2.  The Conspiracy Statute

The *Feola* Court then turned to "consider whether the rule should be different where persons conspire to commit" the substantive offense at hand. *Id.* at 686. With regard to the conspiracy offense, the defendant specifically urged the Court to conclude that

    the Government must show a degree of criminal intent in the conspiracy count greater than is necessary to convict for the substantive offense; he urges that even though it is not necessary to

**11**

show that he was aware of the official identity of his assaulted victims in order to find him guilty of assaulting federal officers, . . . the Government nonetheless must show that he was aware that his intended victims were undercover agents, if it is successfully to prosecute him for conspiracy to assault federal agents. *Id.* at 686-87.

To resolve whether the defendant was correct in his analysis, the Court examined the text of the conspiracy statute. It explained that, if a knowledge requirement exists, it would have to be found within the text of the conspiracy statute, 18 USC 371.

The conspiracy statute at issue in *Feola* made it unlawful to "conspire . . . to commit any offense against the United States." *Feola*, at 687. On the basis of this language, the Court stated that "[a] natural reading of these words would be that since one can violate a criminal statute simply by engaging in the forbidden conduct, a conspiracy to commit that offense is nothing more than an agreement to engage in the prohibited conduct." *Id.* In other words, the Court found that "there is nothing on the face of the conspiracy statute that would seem to require that those agreeing to the assault have a greater degree of knowledge." *Id.* at 687.

Similar to the federal conspiracy statute, Michigan's conspiracy statute prohibits an individual from "conspir[ing] . . . to commit an offense prohibited by law . . . ." MCL 750.157a. A review of the language of the conspiracy statute reveals that a conspiracy to commit an offense prohibited by

law requires nothing more than: 1) an intent to agree; and 2) an intent to engage in the prohibited conduct. See also *People v Atley*, 392 Mich 298, 310; 220 NW2d 465 (1974). In *Justice*, this Court apparently agreed with this general rule. As noted previously, the *Justice* Court stated that "in order to bind defendant over on the two counts of conspiracy there must be probable cause to believe that defendant and the coconspirators shared the specific intent to accomplish the *substantive offenses charged.*" *Justice, supra*, at 337 (emphasis added); see also *id*. at 345-347. The *Justice* Court accordingly proceeded to set forth the substantive offense at issue, MCL 333.7401. Then, without analysis of the substantive offense, *Justice* inexplicably concluded that the "defendant [must] possess[] the specific intent to deliver the statutory minimum as charged . . . ." *Id.* at 349. Such a conclusion, in my judgment, was erroneous because, as noted previously, the language of MCL 333.7401, does not require that a defendant harbor the intent to deliver an amount that falls within a particular statutory range.[8]

---

[8] The majority asserts that I "fail[] to appreciate the fact that in Michigan, pursuant to our statute, the amount of a controlled substance is part of a delivery offense . . . ." See slip op at 12. I respectfully disagree. As stated *supra* at 12, I believe that the relevant element of the delivery offense concerns the amount, not knowledge of the amount, of a controlled substance, and that this former element must be proved beyond a reasonable doubt by the prosecutor.

The majority asserts that, by concluding that a defendant need not possess the intent to deliver the statutory minimum as charged, I am "convert[ing]" a specific intent crime into a general intent crime. Respectfully, I disagree. Again, conspiracy involves: i) an intent to agree, *and* ii) an intent to engage in prohibited conduct. "One of these intents may exist without the other." LaFave, *supra* at 76. Clearly, two or more individuals may intend to agree on some matter without also having an intent to engage in prohibited conduct. For example, A and B agree to burn certain property and A knows the property belongs to C, but B believes that the property belongs to A himself. In this scenario, there is no intent to engage in prohibited conduct on B's part because B believes that the property belongs to A. In the instant case, however, the conspirators clearly had the intent to agree *and* the additional intent to engage in prohibited conduct—the delivery of a controlled substance. Thus, as in *Feola,* the specific intent attributes of a conspiracy remain intact.

### 3. Rejecting the Second Circuit Approach

Next, the *Feola* Court turned to its own case law to determine whether a defendant was ever required to possess specific knowledge of the attendant circumstances when charged with a conspiracy to commit a federal offense. The Supreme Court identified prior case law that repudiated such a position. Citing *In re Coy*, 127 US 731, 8 S Ct 1263, 32 L

**14**

Ed 274 (1888), and *United States v Freed*, 401 US 601, 91 S Ct 1112, 28 L Ed 2d 356 (1971), the *Feola* Court stated that historically it has "declined to require a greater degree of intent for conspiratorial responsibility than for responsibility for the underlying substantive offense." *Id.* at 688.

The Court then turned to *United States v Crimmins*, 123 F2d 271 (CA 2, 1971), the first case that set forth the principle that the government must prove knowledge of the attendant circumstances embodied in the substantive offense in order for a defendant to be liable when charged with a conspiracy. In *Crimmins*, *supra*, the defendant was charged with conspiracy to receive stolen bonds that had been transported in interstate commerce. 18 USC 371; 18 USC 415. The Second Circuit held, that in order to be convicted of conspiracy to commit the substantive offense, it was necessary that the defendant actually know that the bonds crossed interstate lines. *Crimmins, supra* at 273-274. To accept the view that a defendant need not have knowledge of the attendant circumstances would, according to the *Crimmins* court, "enlarge their agreement beyond its terms as they understood them." *Feola, supra* at 689, citing *Crimmins, supra*. To emphasize its conclusion, the *Crimmins* court set forth what has become the well-known traffic light analogy.

> While one may, for instance, be guilty of running past a traffic light of whose existence one

**15**

> is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past. [*Id.* at 273.]

Although the *Feola* Court found this analogy "seductive," it concluded that it was clearly "bad law." *Id.* at 689-690. The Court asserted that the traffic light analogy was relevant only for the category of offenses for which no mental state was required regarding any of the elements. *Id.* at 690; see also LaFave, *supra* at 82. These cases must be distinguished from offenses, such as 18 USC 111, that "require a certain mental state as to some elements of the crime but not as to others." LaFave, supra; *Feola, supra* at 691-92; see also *United States v Franklin*, 586 F2d 560 (CA 5, 1978); *United States v Beil,* 577 F2d 1313 (CA 5, 1978); *State v Brown*, 94 Wash App 327; 972 P2d 112 (1999).

Indeed, like the substantive offense in *Feola,* MCL 333.7401 is an offense that requires a certain mental state regarding some elements of the crime, but not others. A defendant need only have the intent to deliver a controlled substance, MCL 333.7401(1), and then the substance must be in a mixture or in an amount that falls within one of the enumerated ranges, MCL 333.7401(2).

The majority ascribes significance to the fact that the instant offense is one that is "graduated to be more severe as the act is more antisocial . . . ." In the majority's view, the element making the offense more severe must be shown to be

**16**

known by the defendant. I do not see the point. In *Feola*, the offense at issue was similarly "graduated." See also *Franklin, Beil,* and *Brown, supra.* The element that did not require the mental state in *Feola* was the same element that increased the severity of the crime. The defendant did not need to be aware of the element that ultimately determined the severity of the crime. Instead, the prosecutor only needed to prove the existence of particular facts concerning the federal officer's identity and to connect these facts to the conspiracy. Similarly, in this case, where defendant has conspired to deliver a controlled substance and where there has been an act in furtherance of this objective, he need not have been aware that the amount of the controlled substance fell within a particular statutory range in order to be convicted of the more severe crime. Instead, all that is necessary is that the prosecutor prove beyond a reasonable doubt that the amount fell within a particular statutory range, and connect this amount to the conspiracy. Because neither the plain language of MCL 333.7401 nor MCL 750.157a require that a defendant specifically know the amount of controlled substance, the majority is impermissibly adding an element to two otherwise straightforward criminal statutes. *In re MCI,* 460 Mich 396, 414-415; 596 NW2d 164 (1999).[9]

---

[9] Interestingly, the majority uses a similar analysis to *Feola* in its discussion concerning the sufficiency of evidence
(continued...)

**17**

### 4. The Purposes Underlying Conspiracy Law

Finally, the *Feola* Court emphasized that requiring knowledge of the attendant circumstances would be wholly inconsistent with the purposes of the conspiracy statute. *Id.* at 693. The Court, first, opined that conspiracy law serves as a means to protect society from the dangers incident to group criminal activity. *Id.*; see also LaFave, *supra* at 68.

> Given the level of criminal intent necessary to sustain conviction for the substantive offense, the act of agreement to commit the crime is no less opprobrious and no less dangerous because of the absence of knowledge of a fact unnecessary to the formation of criminal intent. Indeed, unless imposition of an "antifederal" knowledge requirement

---

[9](...continued)
necessary for defendant's *aiding and abetting* conviction. Defendant argued that, under the aiding and abetting statute, the prosecutor must show sufficient evidence that defendant "intended the crime of delivery of at least 225 grams of cocaine or had knowledge [that coconspirator] Blackstone intended to deliver at least 225 grams of cocaine at the time he aided the delivery," not merely sufficient evidence that defendant intended a cocaine delivery. Slip op at 14. After reviewing the statute, the majority holds that the requisite intent for a conviction under the aiding and abetting statute "is that necessary to be convicted of the crime as principle." *Id.* Applying this standard, the majority finds that "it was enough for the prosecutor to show that Mass, as with the principal offender Blackstone, knowingly delivered or aided in the delivery of some amount of cocaine, as long as the jury later determined that at least 225 grams of cocaine were in fact delivered. The prosecutor simply did not need to show that defendant knew that the amount of cocaine involved in the instant delivery was at least 225 grams to secure . . . Mass' conviction for aiding and abetting in the delivery of at least 225 but less than 650 grams of cocaine. Conviction of a crime as an aider and abettor does not require a higher level of intent with regard to the commission of the crime than that required for conviction as a principal." *Id.* at 14-15. In my judgment, the same reasoning holds true for conviction on a conspiracy to deliver offense.

**18**

serves social purposes external to the law of conspiracy of which we are unaware, its imposition here would serve only to make it more difficult to obtain convictions on charges of conspiracy, a policy with no apparent purpose. [*Feola,* at 693-694.]

Similarly, Michigan's conspiracy statute serves as a means of addressing the special dangers associated with group activity.

"[C]ollective criminal agreement-partnership in crime-presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise." [*People v Denio*, 454 Mich 691, 704; 564 NW 2d 13 (1997), quoting *People v Carter*, 415 Mich 558, 570; 330 NW 2d 314 (1982).]

Because Michigan conspiracy law also seeks to protect society from the danger of concerted action, it is not relevant whether each defendant has knowledge that the amount of the controlled substance fell within a particular statutory range. The agreement to commit a drug offense, and an act in furtherance of that agreement, "is no less opprobrious and no less dangerous because of the absence of knowledge of a fact unnecessary to the formation of criminal intent." *Feola,*

**19**

*supra*, at 693. A participant in a conspiracy knows that delivery of any amount of drugs is unlawful. Imposition of a knowledge requirement would only serve, without apparent rationale, to make it more difficult to obtain conspiracy convictions that are above the levels of punishment for the lowest level delivery offense.

Further, the *Feola* Court observed that conspiracy law also serves as a means of intervention against individuals who manifest a disposition to criminality. *Feola*, *supra* at 694; see also LaFave, *supra* at 68. "[A]lthough the law generally makes criminal only antisocial conduct, at some point in the continuum between preparation and consummation, the likelihood of a commission of an act is sufficiently great" to justify intervention. *Feola, supra* at 694. At this point "[c]riminal intent has crystallized, and the likelihood of actual, fulfilled commission warrants preventive action." *Id.* Because of this, the Supreme Court again did not see how the imposition of a knowledge element would relate rationally to this purpose. "Given the level of intent needed to carry out the substantive offense, we fail to see how the agreement is any less blameworthy or constitutes less of a danger to society solely because the participants are unaware which body of law they intend to violate." *Id.* Thus, the Court stated that imposition of a knowledge requirement would render it more difficult to serve the purpose behind the law of

conspiracy without serving any other apparent social policy. The Court concluded its analysis by expressly rejecting a result that would, in the context of a conspiracy to commit a federal offense, require that a defendant have knowledge of the attendant circumstances, instead holding that "where knowledge of the facts giving rise to federal jurisdiction is not necessary for conviction of a substantive offense embodying a mens rea requirement, such knowledge is equally irrelevant to questions of responsibility for conspiracy to commit that offense." *Id.* at 696.

As in *Feola*, conspiracy to deliver a controlled substance, and an act in furtherance of this objective, entail a sufficient threat to the social order to be sanctionable in the manner determined by the Legislature.[10] The fact that a conspirator is unaware that the amount of the controlled substance fell within a particular statutory range does not make the agreement any less threatening, or the conduct of the conspirator any less blameworthy. It is enough that defendant or a coconspirator acted in furtherance of their agreement to deliver a controlled substance.

Further, it is important to highlight that the agreement necessary in a conspiracy is not akin to the "meeting of the

---

[10] Indeed, in this case, the offense was carried out to completion, although any overt act would have been legally sufficient to demonstrate the imminence, or the "clear and present" nature, of the threat to the social order.

minds" premises of traditional contract law. LaFave, *supra* at 71. It is not necessary that each conspirator have knowledge of each of the details of the object offense. *Id.*; *People v Cooper*, 326 Mich 514, 521; 40 NW2d 708 (1950) (recognizing that "[i]t is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications"). A mere tacit understanding about the object offense will suffice. LaFave, *supra* at 71. In other words, all that is needed is a generalized agreement to engage in an unlawful objective. Marcus, *supra* at 2-4. There need not be a specific agreement to commit a 200-gram, a 400-gram or a 600-gram conspiracy, nor will the law engage in mind reading in an effort to determine the innermost strategic objectives of each of the individual coconspirators and punish a single conspiracy with multiple levels of punishment depending upon the outcome of such mind reading. The need only for generalized agreement is premised on the fact that conspiracies are inherently clandestine in nature. Because of this secret nature, individual coconspirators may have relatively little knowledge of the conduct or actions of even their own coconspirators; indeed, efforts may frequently be undertaken to limit the dissemination of information concerning strategies and tactics on a "need to know" basis.

Thus, in a conspiracy to deliver case, such as the instant one, all that the prosecutor would need to show regarding a

defendant's intent is a generalized agreement to deliver a controlled substance, i.e., the unlawful objective. That the amount falls within a particular statutory range is the sort of detail that is simply not required to be known by a defendant who enters into the criminal agreement that constitutes the conspiracy. Thus, because the crime of conspiracy focuses on the formation of criminal intent in pursuit of a substantive criminal offense, and because a defendant need not know each of the attendant details of the conspiracy, imposition of a knowledge requirement, a requirement not within the plain language of the conspiracy (or delivery) statute, would undermine the early intervention premises of conspiracy law.

In conclusion, I believe the *Justice* Court impermissibly expanded the plain language of both the delivery statute and the conspiracy statute to require a higher level of culpability on the part of a defendant than that embodied in those statutes. There is nothing within the text of either of these statutes that would compel a finding that a defendant must have knowledge of the amount of the controlled substance in a conspiracy to deliver charge. Thus, I respectfully disagree with the majority's statement that "*Justice* properly concluded that knowledge of the amount of a controlled substance is an element of the crime of conspiracy to deliver a controlled substance and that this holding is consistent with a correct interpretation

**23**

of our controlled substance and conspiracy statutes." Slip op, at 20.

### III. *APPRENDI V NEW JERSEY*

In concluding that knowledge of the amount is an element of a conspiracy to deliver charge, the majority also relies on *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000). As the majority states, *Apprendi* holds that

> [o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Id.* at 2362-2363.

I respectfully disagree that this holding "provides independent support for [the majority's] conclusion." Slip op at 22. The clear language of the *Apprendi* holding does not impose a knowledge requirement. Instead, *Apprendi* stands for no more than what the stated rule declares—it only proscribes the use of nonjury factual determinations to increase a defendant's sentence beyond the statutory maximum for the lowest level delivery offense enacted for the offense charged. In this case, the fact or circumstance that would increase the defendant's sentence beyond the statutory maximum is the amount of the controlled substance, not knowledge of the amount. Thus, pursuant to *Apprendi,* the prosecutor in cases of this type must prove the amount of the substance beyond a reasonable doubt.

Further, the majority cites several federal cases that were decided after *Apprendi* to justify its holding that knowledge of

the amount is an element to a conspiracy to delivery charge. However, not one of the cited cases stands for the proposition that defendant must have knowledge of the amount in order to be convicted of either the substantive narcotics offense or conspiracy to commit the substantive offense. Rather, all that is necessary is proof of the amount. See *United States v Doggett*, 230 F3d 160, 164-165 (CA 5, 2000) (holding that "if the government seeks enhanced penalties based on the amount of drugs . . . the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt"); *United States v Page*, 232 F3d 536, 543 (CA 6 2000) (holding that the jury needed to find a specific quantity before this defendant could be imprisoned to a term exceeding the 20-year statutory maximum); *United States v Fields*, ___ US App DC ___, ___; 242 F3d 393, 396 (2001), clarified on rehearing 2001 WL 640631 (June 12, 2001) (holding that "the Government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt" before defendant can be sentenced to any of the progressively higher maximum penalties). Additionally, there appears to be no state case law addressing this issue subsequent to the *Apprendi* holding. Thus, the majority's opinion is the first apparently to rely on *Apprendi* in order to set forth this "knowledge of the amount" requirement.

Also, the reaffirming of *Justice,* will continue to severely affect the manner in which the prosecutors of this state proceed on these types of offenses. By holding that knowledge of the amount of the controlled substance is an element of a conspiracy to deliver charge, prosecutors are burdened with the additional hurdle of having to prove a defendant's specific knowledge of the amount of a controlled substance—a hurdle, whatever its substantive merits, that the Legislature did not prescribe in the text of the applicable statutes. In light of this additional hurdle, it is likely that in some unknown, but probably quite significant, number of drug prosecutions the prosecutor will be unable to maintain a conviction that is above the statutory maximum for the lowest level delivery offense. This is because the inherent nature of these crimes involve agreements between individuals to deliver "a lot of," "some," or "all that you can get" of a controlled substance. Thus, because a defendant's knowledge that the amount of the controlled substance fell within a particular statutory range will be lacking in many instances, prosecutors, under these circumstances, will only be able to secure a conviction on the lowest delivery amount, in essence, for an amount less than 50 grams.[11] As a result, the sanctions

---

[11] The majority believes that maintaining convictions for conspiracy to deliver less than 50 grams of a controlled substance affords a "significant disincentive" to engage in drug trafficking involving larger amounts. Slip op at 36.

(continued...)

determined to be appropriate for drug crimes by the Legislature will not be carried out. In my judgment, the Legislature intended what it said in MCL 333.7401, namely, that a defendant is responsible for whatever quantity of drugs he delivers regardless of whether he knew that the amount fell within a particular statutory quantity range.

## IV. APPLICATION

When applying the plain language of the delivery and conspiracy statutes, as well as the holding of *Apprendi, supra*, to the facts of this case, I believe that error occurred below because the prosecutor failed to prove the quantity (that the substance weighed 225 or more grams, but less than 650 grams) beyond a reasonable doubt in the context of the conspiracy to deliver charge.

In pertinent part, the jury instructions stated:

> The defendant is charged with the crime of Conspiracy to Commit the Delivery of Cocaine. Anyone who knowingly agrees with someone else to commit the Delivery of Cocaine is guilty of Conspiracy. To prove the defendant's guilt the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant and someone else knowingly agreed to commit Delivery of Cocaine. Second, that the defendant specifically intended to commit or help commit the crime. Third, that this agreement took place, or continued during the period

---

[11](...continued)
However, it is not this Court's role to determine what is or is not a "significant disincentive" for particular conduct; that is the Legislature's role. And the Legislature has determined in MCL 333.7401 that the appropriate disincentives for larger-scale drug trafficking are those set forth in that statute. This Court's duty is to respect this determination.

27

> from March Nineteenth to March Twenty-Seventh,
> Nineteen Ninety-Six. . . . To find the defendant
> guilty of conspiracy, you must be satisfied, beyond
> a reasonable doubt, that there was an agreement to
> deliver-to deliver cocaine.

These instructions clearly omitted any reference to a particular amount of a controlled substance. Yet, on the basis of these instructions, defendant was convicted of conspiracy to deliver more than 225 grams, but less than 650 grams, of cocaine. Conviction on this amount exposed defendant to a term of imprisonment of twenty to thirty years, significantly above the one-to-twenty-year term provided for a conviction on an amount that is less than 50 grams. MCL 333.7401. The jury instructions should have set forth the requisite substance amount in a fashion similar to that set forth to prove the substantive offense, in essence, "that the substance was in a mixture that weighed 225 or more grams, but less than 650 grams." Slip op at 27. Absent an express jury finding on the substance amount, we cannot be certain that the jury found that defendant conspired to deliver an amount of drugs greater than 50 grams. From defendant's guilty verdict, one can only conclude with assurance that the jury concluded that defendant delivered some amount of drugs. And pursuant to Michigan law delivery of any amount of drugs is a crime. MCL 333.7401(2)(iv). Accordingly, as with the majority, I would reverse defendant's conspiracy to deliver 225 grams or more, but less than 650 grams, of cocaine and remand for entry of a conviction

**28**

consistent with the jury verdict, in essence, conspiracy to deliver less than 50 grams of cocaine.

### V. Conclusion

In summary, I believe that the majority's conclusion that knowledge of the amount is a necessary element in a conspiracy to deliver charge is inconsistent with the plain language of both the delivery statute and the conspiracy statute. Where there is an agreement to commit the unlawful act of delivery of a controlled substance and some act in furtherance of that agreement,[12] it is impermissible to require an element of a crime that goes beyond this language. Second, the United States Supreme Court decision in *Apprendi, supra,* does not provide support for imposition of the knowledge requirement. Instead, the *Apprendi* holding establishes the amount of the controlled substance as an element of the offense if the amount operates to increase the penalty for the crime beyond the prescribed statutory maximum. Third, the majority's holding will severely affect the manner in which the prosecutors of this state proceed on these types of crimes. By holding that knowledge of the quantity of a controlled substance is an element to a

---

[12] Again, although Michigan statutory law allows for the prosecution of drug conspiracies where the evidence shows that the conspirators have merely agreed to commit an offense prohibited by law, without an overt act, MCL 750.157a, this is not the case before us-indeed, it is rarely the case before us-and this concurrence takes no position with regard to the need for a conspirator to have knowledge of the specific amount of drugs in such "pure" Michigan conspiracies.

**29**

conspiracy to deliver charge, prosecutors, in some uncertain number of cases, will be unable, for little apparent reason, to maintain a conviction on this offense that is above the statutory maximum for the lowest level delivery offense because evidence concerning a defendant's knowledge in a great number of cases will be lacking.  This is not, in my judgment, what the Legislature intended.  Instead, the Legislature intended what it said—that a defendant who conspires to deliver is responsible for whatever quantity of drugs he agrees to deliver regardless of whether he knew that the amount fell within a particular statutory quantity range.

CORRIGAN, C.J., and WEAVER, J., concurred with MARKMAN, J.