UNITED STATES of America,
Appellee,

v.

Thomas FIELDS, *a/k/a*
Woozie, Appellant.

Nos. 99–3138 and 99–3139.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 2, 2001.

Decided March 13, 2001.

**394**

William Jackson Garber, appointed by the court, argued the cause and filed the briefs for appellant Thomas Fields.

Thomas G. Corcoran, Jr. and· Mary-Ellen Noone, appointed by the court, argued the cause and filed the briefs for appellant Bernard Johnson.

Barbara J. Valliere, Assistant United States Attorney, argued the cause for ap-

pellee. With her on the brief were Wilma A. Lewis, United States Attorney, John R. Fisher and James H. Dinan, Assistant United States Attorneys.

Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Thomas "Woozie" Fields and Bernard "Tadpole" Johnson appeal from judgments of convictions following a jury trial in the District Court. We affirm the convictions of both defendants. However, because we find that plain errors in sentencing affected defendants' substantial rights and undermined the fairness of the sentencing proceedings, we vacate the sentences and remand the case to the District Court for further proceedings consistent with this opinion.

## I. BACKGROUND

This case involves the prosecution and conviction of two members of a coterie known to the Government as the "L Street Crew." In March 1998, a Federal Grand Jury in the District of Columbia returned a 70–count Indictment charging Fields, Johnson, and nine other individuals with Continuing Criminal Enterprise, Conspiracy to Participate in a Racketeer Influenced Corrupt Organization ("RICO Conspiracy"), and various drug trafficking, firearm, and violent offenses. In October 1998, Fields, Johnson, and two other defendants were named in a Superseding 74–count Indictment charging virtually the same offenses. In May 1999, a 64–count Superseding Re-typed Indictment named Fields and Johnson alone.

The May 1999 Indictment charged Fields and Johnson with narcotics conspiracy (Count 1), RICO conspiracy (Count 3), the kidnaping, gang rape, and attempted murder of a young woman referred to herein as K.D. (Counts 12–18), firearms offenses in connection with that rape

(Counts 37–38, and 49–53), the attempted murder of an unknown individual in January 1997 (Counts 32, 33), and firearms offenses related thereto (Counts 45 and 61). Fields was charged, in addition to the above offenses, with continuing criminal enterprise (Count 2), assaults with a dangerous weapon (Counts 4 and 5), assaults with intent to kill, kidnaping, and attempted murder in aid of racketeering activity (Counts 6–11, 19–31), related firearms offenses (Counts 34–36, 39–44, 46–48, 54–60), and money laundering (Counts 62–64).

During the trial, the Government presented evidence of attempted murders, assaults, a kidnaping, and a gang rape. According to the Government's theory of the case, these alleged crimes were motivated by the L Street Crew's desire to protect or expand the area in which the group sold and distributed drugs. Fields took the stand during the trial and admitted to selling drugs to certain individuals, but denied that he held any leadership role with respect to the L Street Crew. Johnson did not testify.

The jury convicted Fields on 40 counts and Johnson on 16 counts. Both Fields' and Johnson's convictions included those for the rape and attempted murder of K.D. At the sentencing hearing, the trial judge adopted the calculations in the Presentence Investigation Report ("PIR"), as well as the Government's proposed findings of fact and conclusions of law, and sentenced Fields to life plus 120 years, and Johnson to life plus 25 years.

## II. ANALYSIS

In this appeal, Fields and Johnson seek review of myriad issues relating to their convictions and sentencing. They assert challenges to venue, sufficiency of the evidence, admission of evidence, joinder of defendants, failure to sever certain counts, the firearms and other sentence enhancements, and calculation of their sentences in light of the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We

have considered carefully all of appellants' arguments; most of appellants' claims require no discussion, because they are meritless. There are two challenges, however, that have merit. We address these claims below.

### A. Determinations of drug quantity

Appellants contend that the sentences they received on Counts 1 (Narcotics Conspiracy) and 3 (RICO Conspiracy) were improperly enhanced beyond the statutory maximum, because the finding as to drug quantity was not made by a jury. The PIR, prepared after the jury trial, divided Fields' 40 counts of conviction into six groups involving substantially the same harm, and Johnson's 16 counts of conviction into two such groups. *See* U.S. SENTENCING GUIDELINES MANUAL § 3D1.2 (1998) (rules for grouping closely related counts). Counts 1 and 3 were included in Group 1, along with Counts 62–64 (Money Laundering). The PIR listed the base offense level for both defendants at 38; this determination was derived from an assumption that the offenses involved *more than* the equivalent of 30,000 kilograms of marijuana. The PIR attributed 173,570 kilograms to Fields and 148,862 kilograms to Johnson. In reaching these estimates, the PIR purported to rely on testimony provided by members of the L Street Crew at the trial.

In *Apprendi*, the Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362–63. It therefore follows that *drug quantity* is an element of the offense where a factual determination of the amount of drugs at issue may result in a sentence that exceeds a maximum sentence prescribed in the applicable statute. *See, e.g., United States v. Pratt*, 239 F.3d 640, 646–47 (4th Cir.2001); *United States v. Aguayo–Delgado*, 220 F.3d 926, 933 (8th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 600, 148 L.Ed.2d 513 (2000); *United States*

*v. Doggett*, 230 F.3d 160, 164–65 (5th Cir. 2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1152, 148 L.Ed.2d 1014 (2001). This court's ruling to the contrary in *United States v. Lam Kwong–Wah*, 966 F.2d 682, 685–86 (D.C.Cir.), *cert. denied*, 506 U.S. 901, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992), is no longer good law. In light of *Apprendi*, it is now clear that, in drug cases under 21 U.S.C. §§ 841 and 846, before a defendant can be sentenced to any of the progressively higher statutory maximums that are based on progressively higher quantities of drugs specified in subsections 841(b)(1)(A) or (B), the Government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt.

■ In the instant case, the Government did not come close to satisfying the requirements of *Apprendi*. The Indictment specified quantities of drugs alleged to be involved in Counts 1 and 3, but the verdict form asked only that the jury find "detectable amount[s]" of marijuana, crack cocaine, and phencyclidine ("PCP") in order to find the defendants guilty. Therefore, it cannot be found that the jury's convictions on those counts were based on any specific factual findings as to drug quantity. It was only in connection with Count 2 (Continuing Criminal Enterprise) that the verdict form required specific findings that defendants distributed 1.5 kilograms or more of crack cocaine and 3,000 kilograms or more of marijuana, and the jury deadlocked on these issues.

It is undisputed that the *quantity* of controlled substances involved was a decisive factor in the defendants' sentences. The sentencing range for violations of 21 U.S.C. § 841 (1994 & Supp. IV 1998) is determined by drug quantities. Section 841(b)(1)(A) of Title 21 provides for a maximum penalty of life where the offense involves 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, and 21 U.S.C.

§ 841(b)(1)(B) provides for a maximum sentence of 40 years where the offense involves 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana. Default statutory maximums of five to 30 years are provided in §§ 841(b)(1)(C) and (D).

In this case, there were no substantive controlled substance act offenses charged under 21 U.S.C. § 841. However, the Narcotics Conspiracy Count was charged under 21 U.S.C. § 846, and alleged a conspiracy to unlawfully possess with intent to distribute and to distribute controlled substances in excess of 1,000 kilograms or more of marijuana, 50 grams or more of cocaine base, and 100 grams or more of PCP, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(A)(ii)-(iv), (vii). The RICO Conspiracy charged under Count 3 also alleged 21 U.S.C. § 841(a) violations.

At the sentencing hearing, the District Court adopted the calculations in the PIR, as well as the Government's proposed findings of fact and conclusions of law, and found "well above" the preponderance standard that 1,670 grams of crack cocaine, 11,388 grams of PCP, and 3,490 kilograms of marijuana were "directly attributable to defendant Thomas Fields" during the course of the charged conspiracy. With respect to Johnson, the District Court found that 1,670 grams of crack, 11,328 grams of PCP, and 2,182 kilograms of marijuana were "reasonably foreseeable and part of jointly undertaken activity by defendant Johnson, and therefore are appropriately attributable to him." The life sentences imposed on appellants were predicated in part on these calculations.

The District Court's sentence enhancements contravene *Apprendi*. However, neither defendant objected at trial to the District Court's determination of drug quantities, so our review is for plain error. *See United States v. Wolff*, 195 F.3d 37, 40 (D.C.Cir.1999); FED.R.CRIM.P. 52(b). And we may exercise our discretion to correct an error pursuant to Rule 52(b) only when an "error" is "plain" or "obvious" under

current law, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

■ The Government concedes that the imposition of life sentences based on drug quantities determined by the trial judge at sentencing was plain error. The Government argues, however, that appellants are not entitled to relief, because they cannot show that the error affected their substantial rights. We disagree.

The Government first asserts that substantial rights were not affected, because the District Court correctly determined that the quantity of drugs far exceeded the amount required under the applicable provision of § 841(b)(1). However, in calculating the quantities at issue, the PIR relied heavily on the imprecise testimony of various cooperating witnesses, and the District Court simply adopted the PIR estimates. The only concrete evidence of drug quantity offered at the trial was from the seizures in this case and the testimony of Mr. Joseph Bono, a forensic chemist with the Drug Enforcement Administration. Government counsel acknowledged that this evidence did not establish that either defendant possessed more than 30,-000 kilograms of marijuana. The Government nevertheless urges us to extrapolate from the concrete evidence and attribute a higher quantity of drugs to each defendant. Obviously, under *Apprendi*, we have no authority to do this. The Government was required to convince the jury, beyond a reasonable doubt, that the defendants possessed enough of a controlled substance for the District Court to adjust the base offense level to 38. They failed to do that in this case.

The Government next suggests that we should ignore drug quantity altogether and rely instead on the § 1963(a) RICO penalty provision. Section 1963 states that "[w]hoever violates any provision of section 1962 of this chapter shall be ... imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)." 18 U.S.C. § 1963 (1994). The Government maintains that appellants were charged with, and convicted of, Racketeering Act 21, the kidnaping of K.D. Kidnaping, under the D.C.Code, carries a maximum sentence of life imprisonment. D.C.CODE ANN. § 22–2101 (1996). Because the jury specifically found that appellants committed Racketeering Act 21, the Government asserts, the jury found facts justifying imposition of the statutory maximum sentence of life totally apart from drug quantity. The error in this reasoning is that neither the PIR nor the trial judge relied on this rationale in imposing the life sentences. Rather, the District Court, in raising the base offense level to 38 for the Group 1 offenses, relied on the PIR's findings on the marijuana equivalency amounts. We therefore reject the Government's arguments.

The District Court's failure to rely on concrete evidence to determine the base offense level for the Group 1 Counts undermined the fairness of the sentencing proceedings, because the error clearly affected the outcome of the case by substantially increasing defendants' sentences. We cannot ignore this plain error.

B.  The leadership enhancement

■ Appellant Fields argues that the four-level increase that he received for his leadership role in various offenses was improper in light of *Apprendi*. He further maintains that the testimony of the various cooperating witnesses showed that they had their own businesses, kept their own money, and that Fields was not their boss. As noted above, the PIR divided the counts of conviction into six groups. In each of these groups, the report recommended a four-level increase in the guideline range based on U.S.S.G. § 3B1.1(a), because Fields was an organizer or leader

of criminal activity that involved five or more participants.

Count 1 (Narcotics Conspiracy) of the Indictment alleged that the conspiracy operated as an organization controlled and directed by Fields. Count 3 (RICO Conspiracy) alleged that Fields was the leader of the organization. The issue of leadership role, however, was not submitted to the jury with respect to Counts 1 and 3. Instead, it was submitted in conjunction with Count 2 (Continuing Criminal Enterprise) and the jury was deadlocked as to this count.

Because the fact of leadership role may increase a defendant's sentence beyond the prescribed statutory maximum, *Apprendi* applies. Accordingly, the issue of leadership must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt. Because Fields did not argue at trial that leadership should have been submitted to the jury, however, we review the record for plain error.

Though we have exercised our discretion to notice plain error with regard to the issue of drug quantity, we decline to do so with regard to leadership enhancement. On the issue of leadership, the record evidence overwhelmingly demonstrates that Fields managed and masterminded various offenses committed by the L Street Crew. Fields enlisted members of the L Street Crew to assist him in distributing controlled substances, including marijuana, crack cocaine, and PCP, directed, procured, and participated in acts of violence against rival drug groups, and orchestrated the kidnaping, sexual assault, and shooting of K.D. Based on the sheer volume of largely uncontested evidence offered at trial, there is proof beyond a reasonable doubt that Fields held a leadership role in the criminal activities for which he was convicted.

C. The sentence enhancements for the Group 2 offenses

■ Appellants contend that the sentence enhancement for their Group 2 offenses was improper. We agree. The Group 2 offenses related to the kidnaping and attempted murder of K.D. The applicable sentencing guideline for Count 12, armed kidnaping, is U.S.S.G. § 2A4.1(a), which provides for a base offense level of 24. The PIR computed an adjusted offense level of 43, pursuant to U.S.S.G. § 2A4.1(b)(7)(B) and Application Note 5, with the rationale that the object of the kidnaping was to commit first degree murder, and the District Court adopted the finding that the attempted murder of K.D. would have constituted first degree murder had she died. The offense of first degree murder was not submitted to the jury, however, and the jury made no finding beyond a reasonable doubt that the object of the kidnaping was to commit first degree murder.

■ Application Note 5 to § 2A4.1 of the U.S. Sentencing Guidelines suggests that if an offense involved conspiracy to kidnap for the purpose of committing murder, or if an offense involved a kidnaping during which a participant attempted to murder the victim under circumstances that would have constituted first degree murder, subsection (b)(7) would reference first degree murder and result in an offense level of 43. We reject this commentary, and the District Court's reliance on it, because it is flatly at odds with the controlling Sentencing Guideline. As the Fifth Circuit correctly noted in *United States v. Smith*, 184 F.3d 415 (5th Cir. 1999), Application Note 5 "violate[s] the dictates of § 2A4.1(b)(7)(B)." *Id.* at 418.

Section 2A4.1(b)(7)(B) of the U.S. Sentencing Guidelines explicitly directs the court to cross-reference the guideline applicable to the crime actually committed. In this case, that crime was attempted murder. In *Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), the Supreme Court held that, if the "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the

other, the Sentencing Reform Act itself commands compliance with the guideline." *Id.* at 43, 113 S.Ct. 1913. Because the Guideline and not the commentary controls, we find that the District Court erred in enhancing appellants' Group 2 offenses by cross-referencing the guideline applicable to first degree murder.

### III. CONCLUSION

In light of the above determinations, we vacate appellants' sentences, and remand the case to the District Court. With respect to the drug calculations, we instruct the District Court to re-sentence the defendants based on the amount of drugs as to which there can be no doubt, *i.e.*, where drug quantity is established by proof beyond a reasonable doubt. On the kidnaping charge, we reverse and remand with instructions to sentence with reference to the Guideline, not Application Note 5.