Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify
the Clerk of any formal errors in order that corrections may be made
before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 11, 2003        Decided April 11, 2003

No. 01-3141
& No. 01-3142

UNITED STATES OF AMERICA,
APPELLEE

v.

THOMAS FIELDS, *A/K/A* WOOZIE, AND
BERNARD JOHNSON, *A/K/A* TADPOLE,
APPELLANTS

————

Appeals from the United States District Court
for the District of Columbia
(No. 98cr00071–01 & No. 98cr00071–06)

————

*William Jackson Garber*, appointed by the court, argued
the cause and filed the briefs for appellant Thomas Fields.

*Thomas G. Corcoran, Jr.*, appointed by the court, argued
the cause for appellant Bernard Johnson. With him on the
brief was *Mary-Ellen Noone*.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the
cause for appellee. With her on the brief were *Roscoe C.
Howard, Jr.*, U.S. Attorney, *John R. Fisher, Roy W. McLeese
III* and *James H. Dinan*, Assistant U.S. Attorneys.

————

Bills of costs must be filed within 14 days after entry of judgment.
The court looks with disfavor upon motions to file bills of costs out
of time.

Before: RANDOLPH and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: For the third time in two years, this court considers the case of Thomas "Woozie" Fields and Bernard "Tadpole" Johnson. Fields and Johnson were each convicted of multiple offenses, including narcotics conspiracy, RICO conspiracy, armed kidnapping, gang rape, and attempted murder. On their first appeal, we upheld the convictions but found that their sentences for narcotics conspiracy violated the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). See *United States v. Fields*, 242 F.3d 393 (D.C. Cir. 2001) ("*Fields I*"). The government sought rehearing, citing some language that appeared to exceed the *Apprendi* rule. On rehearing, we made clear that *Apprendi* applies to findings triggering a higher statutory maximum but not to ones that merely affect a sentence below a statutory maximum; we directed the district court to resentence the defendants in accordance with our opinions. See *United States v. Fields*, 251 F.3d 1041, 1043–44 (D.C. Cir. 2001) ("*Fields II*").

Fields and Johnson now appeal from their resentencing by the district court. We have carefully considered and now reject all of their arguments; only one, a new *Apprendi* claim, requires a written opinion. Johnson argues (as does Fields, but the facts involved in the latter's case add nothing material, so we focus on Johnson) that the district court engaged in an improper "borrowing" or melding of statutory and Sentencing Guidelines provisions for different offenses. Specifically, the court combined (a) Guidelines provisions bumping his sentence up on the basis of drug quantities that *it* found, rather than a jury (and by a preponderance rather than beyond a reasonable doubt), with (b) a statutory maximum of life imprisonment derived from his RICO conviction for armed kidnapping. The result, a sentence of 292 months, was longer than was available to the court for Johnson's *drug* offenses alone (because of the statute and *Apprendi*) or for

his kidnapping conviction alone (because of the Guidelines). He reasons that because the drug quantities could not have resulted in a sentence exceeding the statutory maximum of 20 years on the narcotics conspiracy count—as *Fields I* and *Fields II* make clear—those drug quantities also cannot increase his sentence on the RICO kidnapping count beyond 20 years. The district court rejected this logic and so do we.

\* \* \*

Johnson was convicted of a total of 16 counts, of which the two most relevant for our purposes are Count 1, narcotics conspiracy, and Count 3, RICO conspiracy (including, among other acts, narcotics conspiracy, attempted murder, and armed kidnapping). At trial the jury had not been charged to decide drug quantities. At sentencing, however, the judge found by a preponderance of the evidence that large quantities should be attributed to Johnson, including more than 2,000 kilograms of marijuana, more than 1,600 grams of crack cocaine, and more than 11,000 grams of PCP. Based on these findings and the statutory maxima for such amounts under 21 U.S.C. §§ 841 and 846, the judge initially sentenced Johnson to life in prison on the drug conspiracy count.

We reversed the sentence in a straightforward application of *Apprendi*. "[I]n drug cases under 21 U.S.C. §§ 841 and 846, before a defendant can be sentenced to any of the progressively higher statutory maximums that are based on progressively higher quantities of drugs specified in subsections 841(b)(1)(A) or (B), the Government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt." *Fields I*, 242 F.3d at 396.

In defense of the district court's sentencing, the government argued, among other things, that a life sentence was available for the RICO convictions, under 18 U.S.C. § 1963(a), which provides that RICO violations shall be punishable by imprisonment for "not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)." 18 U.S.C.

§ 1963(a). Because the jury found defendants guilty of armed kidnapping, which can carry a maximum sentence of life imprisonment under D.C. law, D.C. Code Ann. § 22–2101 (1996), the government urged that the life sentence did not violate *Apprendi*. *Fields I*, 242 F.3d at 397.

We rejected the government's RICO argument. As we explained in *Fields II*, upholding the sentence on that theory would have required us to speculate about the district court's intentions. See *Fields II*, 251 F.3d at 1046. But we made clear that "[o]n remand, the Government will be free to argue to the District Court that life sentences should be imposed on the RICO conspiracy count" for the act of kidnapping. *Id.*

On remand, the district court sentenced Johnson to a prison term of 292 months for armed kidnapping and the RICO conspiracy act of armed kidnapping. Following the Sentencing Guidelines (as defendants do not dispute), the court divided Johnson's 16 convicted offenses into two groups. U.S.S.G. §§ 3D1.1, 3D1.2; Re-sentencing Memo ("R.M.") at 6, 7. Group 1 included the narcotics conspiracy and the drug-related RICO racketeering acts. R.M. at 6. Group 2 included the non-drug offenses, namely armed kidnapping and attempted murder, both in their own right and as RICO racketeering acts. R.M. at 7.

Still following the Guidelines, the district court computed the offense level for each group. Based on the drug quantities found by the court, Group 1 had a base offense level of 40, and Group 2 (the non-drug offenses) a level of 30. R.M. at 6–7. It then correctly selected "the offense level applicable to the Group with the highest offense level"—in this case, Group 1's level of 40—as the "combined offense level." U.S.S.G. § 3D1.4; R.M. at 8. Level 40 results in a sentence range between 292–365 months, or roughly 24–30 years, before other adjustments that are irrelevant here.

Because 292 months would exceed the twenty-year statutory maximum under 21 U.S.C. §§ 841(b)(1)(C) and 846 for narcotics offenses where the drug quantity is not found by the jury, the court reduced Johnson's sentence on the drug counts to 240 months, or 20 years, consistent with *Fields I*

and *Fields II*. But for the armed kidnapping and the RICO charge, it imposed sentence terms of 292 months, well within the life maximum. (The sentences were to be served concurrently, as were all of the sentences other than certain gun adjustments.)

Johnson argues that the district court's calculation violates *Apprendi* because the drug quantities found by the court— not the jury—significantly increased his armed kidnapping and RICO offense levels, and thus his sentence. His theory is simply another effort to apply *Apprendi* to sentence-raising Guidelines decisions within a statutory maximum, the proposition that *Fields II* clearly rejected. *Fields II*, 251 F.3d at 1043–44.

Had Johnson been convicted of only the narcotics offense, without the RICO and armed kidnapping charges, then he would have a claim to be sentenced under the statutory maximum for narcotics only. And had he been convicted of the RICO offense only, then he would have a claim to be sentenced under the Guidelines provisions for the RICO offense only. But Johnson was convicted of *both* offenses (and plenty of others). The Guidelines section for multiple-offense convictions plainly states that it "provides rules for determining a single offense level that encompasses *all* the counts of which the defendant is convicted." U.S.S.G. § 3D (Introductory Comment) (emphasis added). This is the device by which the Guidelines supply an integrated solution for a defendant found guilty of multiple crimes.

Sentence maximums depend on convictions, and convictions depend on findings by a jury (unless waived) of the elements of an offense. *Apprendi*, 530 U.S. at 476–77. Where the drug quantity alters the substantive offense, as it can under 21 U.S.C. §§ 841 and 846, *Apprendi* applies. See *United States v. Webb*, 255 F.3d 890, 896 (D.C. Cir. 2001). But there is no reason to apply *Apprendi* to drug quantities affecting the RICO armed kidnapping sentence, as they are not an element of that offense. Rather, such quantities may be proven, like all sentence-affecting facts that are not elements of the offense of conviction, by a preponderance of the

evidence. See, e.g., *In re Sealed Case*, 246 F.3d 696, 699 (D.C. Cir. 2001) (upholding use of preponderance standard for drug quantity determination not exceeding statutory maximum); see also *United States v. Watts*, 519 U.S. 148, 157 (1997) (allowing even acquitted conduct to trigger enhancements if supported by a preponderance of the evidence). In this sense, the drug quantities are treated like any other "relevant conduct" under U.S.S.G. § 1B1.3, which can be found by the court under a preponderance standard. See *United States v. Smith*, 267 F.3d 1154, 1165 (D.C. Cir. 2001).

Both sides invoke *United States v. Rivera*, 282 F.3d 74 (2d Cir. 2000). It is not altogether clear that it helps the government, but the government doesn't need help. Johnson appears to rely on it for its "count-by-count" approach, see, e.g., *id*. at 77 n.3. But *Rivera* speaks only of "*Apprendi*'s count-by-count approach," alluding to the *Apprendi* Court's insistence that the sentence on a count not exceed the maximum permissible, based on a jury finding of the elements for that count; thus it did the government no good in *Apprendi* that the total of the defendant's sentences on three counts did not exceed the total permissible if he'd received the legal maximum on each. See *Apprendi*, 530 U.S. at 474; *Rivera*, 282 F.3d at 77 n.3; *United States v. White*, 240 F.3d 127, 135 (2d Cir. 2001). No such problem is presented here as the court sentenced defendants within the statutory maximum on each count.

\* \* \*

Before the Guidelines, Johnson's sentence would have been equally permissible; faced with an array of convictions, including one that authorizes a life sentence, a district court could constitutionally have exercised its discretion to sentence the defendant to life in prison based on facts found by the court. *Apprendi* itself recognized this. See *Apprendi*, 530 U.S. at 481–82. The formulaic quality of the Guidelines may make the innumerable necessary fact findings look like offense elements, but they are not. That is the message of such cases as *Watts* and *Fields II*.

The judgments of the district court are

*Affirmed.*