# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 3, 2016               Decided July 8, 2016

No. 13-3075

UNITED STATES OF AMERICA,
APPELLEE

v.

GERRY DUANE BURNETT,
APPELLANT

Consolidated with 13-3076, 13-3078

Appeals from the United States District Court
for the District of Columbia
(No. 1:12-cr-00042-3)
(No. 1:12-cr-00042-1)
(No. 1:12-cr-00042-4)

*Howard B. Katzoff*, appointed by the court, argued the cause for appellant Jesse McLester Young, Jr. *Vincent Jankoski*, appointed by the court, argued the cause for appellant Thaxton Young, Jr. *Mary E. Davis*, appointed by the court, argued the cause for appellant Gerry Duane Burnett. With them on the briefs was *Christopher M. Davis*.

*Finnuala K. Tessier*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief

was *Elizabeth Trosman*, Assistant U.S. Attorney. *Elizabeth H. Danello*, Assistant U.S. Attorney, entered an appearance.

Before: KAVANAUGH, SRINIVASAN, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Eugene McDuffie, Thaxton Young, Jesse Young, and Gerry Burnett conspired to distribute heroin in Washington, D.C. (Thaxton Young and Jesse Young are cousins. For ease of reading, we will refer to the two Youngs by their first names.) Beginning about May 2011 and continuing through January 2012, McDuffie and Thaxton made frequent trips from Washington, D.C., to New York City and other locations along the I-95 corridor. They took those trips to obtain significant quantities of heroin from Thaxton's cousin, Jesse, who lived in New York. McDuffie and Burnett would then resell the heroin in the Washington, D.C., area.

The Government obtained a federal grand jury indictment against Thaxton, Jesse, and Burnett. (McDuffie separately pled guilty and ultimately testified against the three defendants in this case.) The indictment against the three defendants charged them with one count of conspiracy to distribute and possess with intent to distribute a kilogram or more of heroin in violation of 21 U.S.C. §§ 846 and 841. The indictment also charged Burnett alone with one count of possession with intent to distribute heroin and one count of possession with intent to distribute marijuana.

Following a three-week jury trial, Thaxton, Jesse, and Burnett were convicted of one count of a lesser-included

conspiracy offense: conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin. A jury also found Burnett guilty of the heroin possession and marijuana possession counts.

The court sentenced Thaxton, Jesse, and Burnett to terms of imprisonment as follows: 11 years and three months for Thaxton; 11 years and three months for Jesse; and 12 years and seven months for Burnett.

On appeal, Thaxton, Jesse, and Burnett challenge their convictions on a variety of grounds. Jesse and Burnett also contest the District Court's calculation of their sentences. We affirm the judgments of conviction and sentence in all respects, except that we vacate Burnett's sentence and remand for the District Court to resentence Burnett.

I

We begin with a brief factual background of this case. Because we are reviewing a guilty verdict, we recount the evidence in the light most favorable to the Government.

McDuffie and Thaxton lived in the Washington, D.C., area. In the spring of 2011, McDuffie and Thaxton agreed to sell heroin. They planned to purchase the heroin from Thaxton's cousin, Jesse, who lived in New York City. Beginning in May 2011, McDuffie and Thaxton took the first of several trips to New York City to obtain heroin from Jesse.

In August 2011, the Government began investigating McDuffie, Thaxton, Jesse, and Burnett, after a confidential source notified the Government that McDuffie was trafficking in drugs. Shortly after opening its investigation, the Government obtained warrants to track McDuffie's car and

cell phone, as well as Thaxton's car. GPS data, which was later corroborated by eyewitness testimony, phone records, text messages, and rental car records, revealed a pattern: About once a month, McDuffie, Thaxton, or both, would travel – often by rental car – from Washington, D.C., to New York City or some other location along the I-95 corridor. There, they would meet briefly with Thaxton's cousin Jesse to obtain heroin. McDuffie and Thaxton would then bring the heroin back to Washington, D.C., where McDuffie would sell it. McDuffie sold some of the heroin to Burnett, who in turn would re-sell some of it.

Within a few days of such trips in October, November, and December, 2011, McDuffie told a confidential informant for the Government that he was able to sell heroin. McDuffie made three controlled sales to the informant. Recordings from those controlled sales revealed that McDuffie had been storing heroin at Burnett's home in Washington. Phone records and GPS data also revealed that following the controlled sales, McDuffie arranged to meet Thaxton in order to share the proceeds.

On January 18, 2012, McDuffie spoke to the confidential informant to arrange another sale of heroin. On January 20, Thaxton rented a car. On the following day, January 21, McDuffie and Thaxton drove the rental car to Philadelphia to meet Jesse. Federal agents personally observed McDuffie and Thaxton in Philadelphia. The agents saw the two men spend only a short time in Philadelphia before returning to their rental car and heading back down I-95 toward Washington. Concluding that McDuffie and Thaxton had likely obtained drugs from Jesse and that the rental car they were driving would contain those drugs, the federal agents asked the Maryland State Police to stop and search the rental car. Maryland State Police did so, and during the search

they found about 62 grams of heroin in the car. The Maryland State Police arrested McDuffie and Thaxton.

Shortly thereafter, the Federal Government obtained search warrants to search the homes of Thaxton and Burnett. At Thaxton's home, agents recovered two digital scales and more than $1,000 in cash. At Burnett's home, agents recovered heroin, marijuana, drug paraphernalia, and more than $6,000 in cash.

The Government obtained a three-count federal grand jury indictment against Thaxton, Jesse, and Burnett.[1] All three defendants were charged with one count of conspiring to distribute and possess with intent to distribute a kilogram or more of heroin in violation of 21 U.S.C. §§ 846 and 841. In light of the heroin and marijuana found at his home, the indictment also charged Burnett alone with one count of possession with intent to distribute heroin and one count of possession with intent to distribute marijuana.

A jury found all three defendants guilty of the lesser-included offense of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 846 and 841. The jury also convicted Burnett of the separate heroin and marijuana possession counts. The District Court then sentenced the defendants to the following terms of imprisonment: 11 years and three months for Thaxton; 11 years and three months for Jesse; and 12 years and seven months for Burnett.

---

[1] McDuffie had been named in an earlier indictment charging all four men. However, in light of a plea agreement he reached with the Government on April 4, 2012, McDuffie was not included in the April 17, 2012, indictment. McDuffie later became a cooperating witness in the Government's case against the defendants.

The defendants have appealed on a variety of grounds.

II

Thaxton raises a Fourth Amendment challenge to the officers' stop and search of his rental car on I-95 on January 21, 2012, as McDuffie and Thaxton returned from their Philadelphia meeting with Jesse.  Thaxton argues that the officers lacked probable cause to stop and search the car.  He claims that evidence recovered during the search therefore should have been excluded from his trial.  The District Court denied his motion to suppress.  Our review is de novo. *United States v. Holmes*, 505 F.3d 1288, 1292 (D.C. Cir. 2007).

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.

Under Supreme Court precedent, when "a car is readily mobile and probable cause exists to believe it contains contraband," the Fourth Amendment permits police to stop the car and search it without a warrant. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam).

Probable cause is an objective standard "to be met by applying a totality-of-the-circumstances analysis." *United States v. Vinton*, 594 F.3d 14, 21 (D.C. Cir. 2010); *see also Illinois v. Gates*, 462 U.S. 213, 230-32 (1983).  Probable cause is more than bare suspicion but is less than beyond a

reasonable doubt and, indeed, is less than a preponderance of the evidence. *See Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in the [probable-cause] decision. All we have required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'") (internal citation, alteration, and quotation marks omitted); *see also United States v. Cardoza*, 713 F.3d 656, 660 (D.C. Cir. 2013) (Probable cause "does not require certainty, or proof beyond a reasonable doubt, or proof by a preponderance of the evidence."); *Illinois v. Gates*, 462 U.S. at 231-32 (describing probable cause as a "fluid concept" that turns on "factual and practical considerations of everyday life on which reasonable and prudent" people, "not legal technicians, act"); *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (Probable cause is "less than evidence which would justify . . . conviction" but "more than bare suspicion.").

Probable cause may be based on the "collective knowledge of the police." *United States v. Hawkins*, 595 F.2d 751, 752 n.2 (D.C. Cir. 1978). Therefore, on this issue, we will refer to the federal agents and the Maryland State Police collectively as the "officers."

Here, the officers had probable cause to believe that McDuffie's and Thaxton's rental car contained drugs. The probable cause was based in part on the pattern that the officers had observed for several months: At the end of October, November, and December 2011, GPS data from McDuffie's car, phone, or both revealed that McDuffie had traveled to Thaxton's home in Columbia, Maryland. GPS data available for two of the trips showed that while McDuffie's car remained at Thaxton's home, his cell phone would travel up I-95 either to Jesse's house in the Bronx, New

York, or to a pizza restaurant nearby. After spending only a short time in the locale in question, McDuffie's cell phone traveled back down I-95 to Thaxton's house. Shortly after each of these monthly trips, McDuffie arranged to sell heroin to the confidential informant.

On January 21, 2012, about a month after the December trip up I-95, GPS data showed McDuffie's car again travelling to Thaxton's home in Maryland. McDuffie's car remained there while his cellphone was traced traveling up I-95 to Philadelphia. Meanwhile, in Philadelphia, officers personally surveilled McDuffie and Thaxton. They observed the two men spend only a short time there before the two men departed southbound on I-95.

Based on McDuffie's and Thaxton's prior pattern of activity and the officers' direct observations of McDuffie and Thaxton on January 21 in Philadelphia, the officers had probable cause that the rental car would contain the illegal drugs that McDuffie and Thaxton had just acquired in Philadelphia. After all, common sense suggested that this was yet another drug purchasing trip.

Thaxton's only real response is that there was no probable cause to believe the rental car would contain drugs because the trip to Philadelphia was not consistent with the alleged pattern of prior drug purchasing trips. In advancing this argument, Thaxton relies on the fact that he and McDuffie traveled not to New York City, but rather to Philadelphia. We agree with the Government, however, that a pattern of activity need not be identical in order to support probable cause. Apart from the different pick-up location for the heroin, Thaxton's and McDuffie's trip was identical in all other relevant respects to the three previous trips up I-95 that were heroin pick-up trips.

In short, the officers had probable cause to believe that Thaxton's rental car would contain illegal drugs. As a result, the stop and search of the car was valid under the Fourth Amendment.

III

All three defendants next raise an argument about the Maryland State Police's inadvertent destruction of the heroin found in Thaxton's car.

When searching Thaxton's rental car on January 21, 2012, the Maryland State Police recovered about 62 grams of heroin. Soon thereafter, the State of Maryland charged McDuffie and Thaxton with drug-related offenses. In March 2012, however, the State dismissed those charges after learning of the Federal Government's intent to rely on that seized heroin in its long-running investigation of this drug trafficking operation.

The heroin seized from Thaxton's rental car was stored at a Maryland State Police facility. The drugs remained there even after the state charges against McDuffie and Thaxton were dismissed. Owing to space constraints at the facility, the Maryland State Police protocol was to destroy evidence after it was no longer needed in a particular case. Sometime after March 2012, a routine check of Thaxton's and McDuffie's case status revealed that the State had dropped the drug-related charges against them. However, the state case management system mistakenly failed to flag that a federal case against them continued. In October 2012, thinking that there was no reason to preserve the heroin, Maryland personnel ordered its destruction.

Because the heroin from the rental car had been destroyed, the Federal Government moved to admit secondary evidence of that heroin. The Government proposed to introduce testimony, lab reports, photographs, and video related to the heroin seized from the rental car. The District Court granted the Government's motion. The defendants claim that the admission of secondary evidence in place of the drugs themselves violated their due process rights. We disagree.

To make out a claim that the destruction of evidence violated the Due Process Clause, "the *defendant* bears the burden of proving that the government failed *in bad faith* to preserve *material* and *potentially exculpatory* evidence." *United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991) (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

In analyzing this claim, the District Court concluded that the "Maryland State Police destroyed the heroin after a routine check . . . revealed that the State of Maryland charges had been dismissed, and . . . the government contends this was an inadvertent mistake made in good faith and the defendants have not shown otherwise." Tr. of Motion in Limine Hearing (Mar. 22, 2013), Joint Appendix at 615. We review the District Court's determination of good faith for clear error. Defendants have pointed to nothing in the record that undermines the District Court's finding. We "certainly cannot say that the district court's decision regarding the quintessentially factual question of intent was clearly erroneous." *McKie*, 951 F.2d at 403.

In this Court, the defendants also raise a new argument. They claim that the District Court focused on the wrong government entity in assessing bad faith. Specifically, they argue that the lack of *federal* policies to ensure preservation

of the drugs by the *state* agency was evidence of the Federal Government's bad faith. The defendants cite no precedent to suggest that the Federal Government may not rely on a state agency, or vice versa, to store contraband relevant to ongoing criminal investigations. We need not delve into the subsidiary question of when a "storing government's" bad faith may be attributed to the "prosecuting government" in such circumstances. Suffice it here to say that the defendants did not present sufficient evidence of bad faith by either the Federal Government or the Maryland State Police in connection with the Maryland State Police's inadvertent destruction of the drugs.

Not only have the defendants failed to prove bad faith, they also have advanced no credible argument that the destroyed evidence was "potentially exculpatory," which is a separate requirement to succeed on this kind of due process claim. *Id.* (emphasis omitted). A field test and a lab test revealed the recovered substance to be heroin. Moreover, a small quantity of the substance seized from the vehicle on January 21 was not destroyed and also tested positive for heroin. And during the several months the drugs sat in the custody of the Maryland State Police, the defendants apparently never requested to test the evidence themselves, presumably because there was no doubt that it in fact was heroin.

In sum, the defendants' due process argument about the destruction of heroin evidence is unavailing.

12

IV

Burnett claims that the search of his home by federal agents violated the Fourth Amendment and that the evidence seized from the home should have been excluded from trial.

On March 1, 2012, after obtaining a search warrant, federal law enforcement officers searched Burnett's home in Southeast Washington, D.C. There, officers found about 280 grams of marijuana in different locations around the house, as well as 34 grams of heroin in a tea kettle. Officers also discovered more than $6,000 in U.S. currency and various drug paraphernalia, including three digital scales and a spoon with heroin residue.

Before trial, Burnett moved to suppress the items seized during the search of his home. The District Court denied the motion. On appeal, Burnett maintains that evidence from his home should have been suppressed because it was recovered pursuant to a search warrant lacking probable cause. We review the District Court's legal conclusions de novo and its factual findings for clear error. *United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012).

In certain circumstances, the exclusionary rule bars the introduction of evidence obtained in violation of the Fourth Amendment. At the same time, the Supreme Court has emphasized that the exclusionary rule has limited application when a search is conducted pursuant to a search warrant. *See United States v. Leon*, 468 U.S. 897, 919-21 (1984). The exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920. That is because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of

magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984). Ordinarily, we cannot expect officers "to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921.

In this case, the federal magistrate judge found probable cause and issued a search warrant. Burnett contends that the search warrant was invalid because the judge's probable cause finding depended in part on GPS tracking of McDuffie's cell phone inside Burnett's home. Burnett argues that the GPS tracking inside his home was itself unlawful under the Fourth Amendment and therefore could not be used to support the probable cause finding for a search warrant of the home. But even if the magistrate judge erred by relying in part on the GPS data and the magistrate judge's probable cause finding was erroneous – which we certainly do not suggest – the evidence found in Burnett's home would be admissible under *Leon*.

To be sure, there are a few exceptions to the *Leon* rule. Burnett invokes the exception that applies when the officer's affidavit supporting a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. This case does not come close to qualifying for that exception.

Even apart from the GPS data, the affidavit in this case described many pieces of evidence supporting the issuance of a search warrant. In a recording of one controlled heroin sale, McDuffie can be heard telling the confidential informant that he had picked up heroin on the day before the sale and left it with his "other man" who lived near the "jail." Burnett's home is located about two blocks from the Washington, D.C., Correctional Facility. GPS tracking data

14

from McDuffie's car placed the car in the vicinity of Burnett's residence on the evening before another sale from McDuffie to the confidential informant. Further, the confidential informant stated that during that particular transaction, McDuffie made an outgoing call in an attempt to acquire more heroin to sell to the confidential informant. Call records of McDuffie's cell phone reveal that during the time of the sale, an outgoing call was made to Burnett's phone. Finally, federal agents observed McDuffie and Burnett together for much of the day before another controlled sale. Agents saw the two men briefly stop at Burnett's residence before traveling in McDuffie's car to two other residences. According to the affidavit, the agents believed that McDuffie and Burnett had stopped at Burnett's home to pick up drugs for distribution.

This Court has held that "observations of illegal activity occurring away from the suspect's residence" can "support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993) (per curiam). In this case, McDuffie's conversations with the confidential informant, together with the unchallenged GPS data and the federal agents' observations of McDuffie and Burnett, provided a basis to believe that evidence of drug distribution would be found inside Burnett's home.

In short, the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Applying *Leon*, we therefore conclude that the exclusionary rule did not bar admission of evidence seized from Burnett's home.

15

V

Thaxton and Jesse next challenge the Government's introduction of evidence that those two defendants had pled guilty to federal drug charges in prior cases. Thaxton and Jesse contend that Federal Rule of Evidence 404(b) – which authorizes admission of "other acts" evidence in certain circumstances – did not authorize the admission of their prior guilty pleas. In the alternative, they claim that even if such evidence was admissible under Rule 404(b), it was inadmissible under Federal Rule of Evidence 403, which provides for exclusion of evidence that is substantially more prejudicial than probative.

As to Rule 404(b), defendants argue that the Government must identify a chain of reasonable inferences – other than the defendant's propensity to criminal acts – that links the proffered prior-bad-acts evidence to an element in the case. *See, e.g.*, *United States v. Turner*, 781 F.3d 374, 391 (8th Cir. 2015); *United States v. Caldwell*, 760 F.3d 267, 282 (3d Cir. 2014); *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc); *United States v. Douglas*, 482 F.3d 591, 599 (D.C. Cir. 2007). According to defendants, the Government did not explain to the District Court nor did the District Court explain to the jury how, for example, Jesse's earlier conviction of possession with intent to distribute heroin might help to establish his intent to conspire with Thaxton and McDuffie to distribute heroin. Defendants stress that it is important to differentiate between "the illegitimate use of a prior conviction to show propensity and the proper use of a prior conviction to prove intent." *United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) (quoting *United States v. Jones*, 389 F.3d 753, 757-58 (7th Cir. 2004)).

But we need not decide that Rule 404(b) issue or the Rule 403 issue here because we conclude that any potential error in admitting the evidence was harmless. *See Kotteakos v. United States*, 328 U.S. 750, 776 (1946) (non-constitutional error harmless if no "substantial and injurious effect or influence in determining the jury's verdict"); *see also United States v. Johnson*, 216 F.3d 1162, 1166 n.4 (D.C. Cir. 2000).

On a number of occasions in which defendants have raised similar Rule 404(b) arguments on appeal, we have upheld the convictions on harmless error grounds. *See, e.g.*, *United States v. McGill*, 815 F.3d 846, 886-87 (D.C. Cir. 2016); *United States v. Moore*, 651 F.3d 30, 63-64 (D.C. Cir. 2011); *United States v. Stubblefield*, 643 F.3d 291, 296-97 (D.C. Cir. 2011); *United States v. Linares*, 367 F.3d 941, 952-53 (D.C. Cir. 2004); *United States v. King*, 254 F.3d 1098, 1101-02 (D.C. Cir. 2001).

So too here. "The government bears the burden of proving" harmless error, *Linares*, 367 F.3d at 952, and has met its burden here. The evidence of Thaxton's and Jesse's guilt in this case was so overwhelming that the prior convictions evidence could not have had a substantial impact on the jury's verdict. The Government presented a cooperating witness, McDuffie. McDuffie's testimony was devastating to the defendants. Importantly, his testimony was corroborated in many ways. His testimony about his trips with Thaxton to obtain heroin from Jesse was substantiated by surveillance, rental car records, GPS tracking data for McDuffie's car and phone, as well as text messages sent by McDuffie, Thaxton, and Jesse to arrange meetings on the dates mentioned in McDuffie's testimony. Further, in a recorded conversation between McDuffie and the confidential informant, McDuffie can be heard saying that his heroin supplier was his "best friend's cousin." Jesse is Thaxton's

cousin. Finally, a large quantity of heroin was seized from a rental car in which Thaxton was traveling; drug paraphernalia and cash were seized from Thaxton's home.

The strength of the Government's case is underscored by the absence of countervailing evidence. Jesse offered the testimony of his fiancée, but her testimony was unpersuasive. Her claim that she and Jesse met McDuffie and Thaxton in Philadelphia purely by chance on January 21, 2012, was belied by text messages revealing that Thaxton and Jesse had planned to meet in Philadelphia that day.

Evidence of Thaxton's and Jesse's prior guilty pleas "formed a small part of what was otherwise an overwhelming case against" them. *McGill*, 815 F.3d at 886. Therefore, any possible error in admitting evidence of Thaxton's and Jesse's prior guilty pleas was harmless.

## VI

Finally, we consider defendants' sentencing challenges.

First, Jesse and Burnett both challenge the District Court's calculation, for Sentencing Guidelines purposes, of the total quantity of heroin attributable to the conspiracy.[2] That challenge fails.

---

[2] Thaxton initially joined the challenge to the District Court's calculation of the total drug quantity. However, Thaxton's challenge has since become moot. While his appeal was pending before this Court, the District Court lowered Thaxton's sentence to 10 years under an amendment to the Sentencing Guidelines. *See* U.S. SENTENCING GUIDELINES MANUAL supp. to app. C, amend. 782 (Nov. 1, 2014) (lowering base offense level for many drug offenses); *see also United States v. Cardoza*, 790 F.3d 247 (1st Cir. 2015). The lowered sentence of 10 years is the *statutory*

Second, Burnett also argues that the District Court erred in basing his sentence on conduct that occurred before he joined the conspiracy. That claim has merit, and we therefore vacate Burnett's sentence and remand for resentencing of Burnett.

A

Jesse and Burnett maintain that the District Court, in applying the Guidelines, erred in calculating the total quantity of heroin attributable to their drug distribution conspiracy. Specifically, Jesse and Burnett allege that the Court double-counted a 130-gram quantity of heroin. They also claim that the evidence did not support the District Court's finding of the amount of heroin obtained in the November and December 2011 transactions.

Under the Sentencing Guidelines, a district court determines a defendant's sentencing range by calculating the defendant's base offense level. A base offense level, in turn, is derived from a defendant's "relevant conduct." For drug offenses, "relevant conduct" includes the quantity of drugs involved in the offense. *See, e.g.*, *United States v. Childress*, 58 F.3d 693, 721-22 (D.C. Cir. 1995). A district court makes findings of drug quantities under a preponderance of the evidence standard. *United States v. Fields*, 325 F.3d 286, 289 (D.C. Cir. 2003). We review those factual findings for clear error.

---

mandatory minimum for Thaxton's offense, meaning that any error in the District Court's calculation of drug quantity for Guidelines purposes is moot, as the parties all agree.

The defendants initially maintain that the District Court double-counted a 130-gram quantity of heroin. Even if they are correct on that point, however, the miscalculation did not affect their base offense level.

The District Court attributed a total of 995.7 grams of heroin to the conspiracy, which placed Jesse and Burnett at a base offense level corresponding to 700 grams to 1 kilogram of heroin. A subtraction of 130 grams from 995.7 grams still leaves Jesse and Burnett well within the 700 gram to 1 kilogram range. In other words, Jesse's and Burnett's offense level – and, in turn, their sentencing range – would not have changed even absent the double-counting.[3]

Jesse and Burnett separately claim that the District Court erroneously attributed too much heroin to the November and December 2011 drug transactions. They are incorrect. McDuffie testified that he and Thaxton traveled to New York to obtain heroin in May, June, maybe July, October, November, December 2011, and January 2012. McDuffie also stated that he picked up no fewer than 50 grams on any single trip. And twice he stated that the most heroin that he and Thaxton ever received on a single trip was 400 grams. Based on McDuffie's testimony, the District Court attributed 50 grams to a May trip, 130 grams to a June trip, 130 grams to a July trip, and 235.7 grams to two trips in January. Crediting McDuffie's testimony that McDuffie and Thaxton

---

[3] Jesse and Burnett argue only that the District Court's miscalculation resulted in an incorrect base offense level. They do not make the further claim that, even within the same base offense level, the District Court would likely have imposed a sentence further down the Guidelines range. Nor do the defendants make a claim that the District Court, had it not allegedly double-counted the 130 grams, would have varied below the Guidelines range in imposing their sentences.

made trips in November and December, the District Court attributed 400 grams to one of those trips and 50 grams to the other, a combined total of 450 grams.

The District Court's logic in calculating the November and December trip amounts was sound and its estimate conservative. Twice McDuffie testified that he and Thaxton had received 400 grams on a certain trip. McDuffie associated specific drug quantities with each trip save for those in November and December. Therefore, the 400-gram transaction must have occurred in either November or December. The Court attributed 400 grams to one of those trips and 50 grams – the minimum quantity mentioned by McDuffie – to the other trip.

Jesse and Burnett maintain that the District Court should have found 200 grams of heroin, not 400 grams, as the maximum quantity obtained on any single trip. To support their claim, Jesse and Burnett point to testimony in which McDuffie stated that the most heroin he recalled receiving during his trips to New York was 200 grams. But that testimony directly contradicted two other statements by McDuffie that the most heroin he received on a trip to New York was 400 grams. We have no basis to second-guess the District Court's decision to credit McDuffie's two consistent statements over his one conflicting account.

The District Court did not clearly err by attributing the 450 grams of heroin to the conspiracy.

B

Burnett also argues that the District Court clearly erred by basing his sentence in part on conduct that occurred before he joined the conspiracy. We agree.

The Sentencing Guidelines limit the relevant conduct that may be attributable to a co-conspirator: (1) The acts must be in furtherance of the conspiracy to which the defendant agreed; and (2) the acts must be reasonably foreseeable to the defendant. *Childress*, 58 F.3d at 722. Of relevance here, when calculating a sentence, a district court may not attribute to a defendant conduct that occurred *before* he joined the conspiracy. U.S.S.G. § 1B1.3, Application Note 3.

The District Court here based Burnett's sentence, in part, on conduct that occurred before he joined the conspiracy. Burnett concedes that he did not contemporaneously object to the District Court's oversight. We therefore review this claim for plain error. The Supreme Court recently explained that plain error in the Guidelines calculation context means this: A defendant must demonstrate "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343, slip op. at 4 (2016) (internal quotation marks omitted). In the sentencing context, a defendant who demonstrates that he was sentenced under an incorrect Guidelines range will typically have demonstrated a reasonable probability that the outcome of the proceeding would have been different but for the error. *Id.* at 1345, slip op. at 9. This holds true, the Supreme Court stated, even if the defendant's sentence "falls within both the correct and incorrect range." *Id.*

Here, in calculating Burnett's base offense level, the District Court attributed to Burnett 995.7 grams of heroin – the total amount associated with the conspiracy from its inception. The District Court based that calculation on evidence about several trips to pick up heroin spanning from May 2011 to January 2012. But McDuffie's testimony

established – and the Government does not dispute – that Burnett did not join the conspiracy until August or September of 2011. McDuffie testified that he made trips to New York to obtain heroin in May, June, and perhaps July of 2011. The heroin the District Court associated with those three trips – totaling 310 grams – should not have been used to calculate Burnett's sentence, because Burnett did not join the conspiracy until August or September of 2011. Subtracting 310 grams from the 995.7 grams that the District Court attributed to Burnett leaves 685.7 grams of heroin attributable to Burnett. That amount corresponds to a lower base offense level under the Sentencing Guidelines. And that lower base offense level, in turn, corresponds to a different, lower sentencing range.

Under the Supreme Court's articulation of the plain error standard in *Molina-Martinez*, Burnett therefore has shown plain error. He must be resentenced.

\* \* \*

We affirm the judgments of conviction and sentence in all respects, except that we vacate Burnett's sentence and remand for the District Court to resentence Burnett.

*So ordered.*